CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
cchoi@hibklaw.com
aito@hibklaw.com
Attorneys for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>STEVEN KARL HERRON,<br><br>      Debtor and Debtor-in-Possession.<br><br>90626 | Bk. No. 24-00634<br>(Chapter 11)<br><br>Hearing:<br>Date:  January 12, 2026<br>Time:  2:00 p.m.<br>Judge: Hon. Robert J. Faris |

### MOTION FOR ORDER (I) APPROVING SETTLEMENT AGREEMENT; AND (II) DISMISSING CHAPTER 11 CASE; EXHIBITS A-B; DECLARATION OF STEVEN K. HERRON

STEVEN KARL HERRON, the debtor and debtor-in-possession herein (the "Debtor"), hereby moves this Court, for an order approving a (i) settlement among the Debtor, and KENNETH WAYNE HAMP ("Hamp") and CHRISTINE HAYEK ("Hayek" and together with Hamp, "H&H") pursuant to a Settlement Agreement

1

(the "Agreement") in the form attached hereto as <u>Exhibit A</u>[1] and incorporated herein by reference, and (ii) dismissing the Debtor's Bankruptcy Case.

In support of this Motion, the Debtor respectfully represents as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.    This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    <u>BACKGROUND</u>

3.    On July 1, 2024, a comprehensive order (the "July 1 Order") was issued in favor of H&H and against the Debtor in the Routt County, Colorado District Court, Case Nos. 2020CV300700 and 2021CV000008 (together, the "State Court Case").

4.    On July 9, 2024, the Debtor filed a Notice of Appeal from the July 1 Order in the State Court Case.

5.    On July 15, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court").

---

[1] Capitalized terms not herein defined shall have the meaning set forth in the Agreement.

U.S. Bankruptcy Court - Hawaii   #24-00634   Dkt # 247   Filed  12/15/25   Page 2 of 27

6.      On August 27, 2024, the Bankruptcy Court approved a stipulation for relief from the automatic stay in the Bankruptcy Case to allow the State Court Case and related appeals to proceed.  *See* dkt # 34.

7.      On August 30, 2024, an Amended Final Judgment was entered in the State Court Case in favor of Hayek and against Christine Copeland ("Copeland") awarding prejudgment interest through July 1, 2024, in the amount of $458,866.89 for a total award in favor of Hayek in the amount of $1,458,866.89 (the "Copeland Judgment").

8.      On October 23, 2024, Copeland filed a Notice of Appeal of the Copeland Judgment, which was assigned case number 2024CA1827 (the "Copeland Appeal").

9.      On November 21, 2024, an amended final judgment was entered in favor of Hamp and against the Debtor in the State Court Case in the amount of $9,950,076.24 (the "Hamp Judgment"), and on December 30, 2024, a second amended judgment was entered in the State Court Case in favor of Hayek and against Debtor in the amount of $15,834,099.59 (the "Hayek Judgment", together with the Hamp Judgment, the "Judgments"). The Judgments are accruing post-judgment interest, currently at the rate of 7% per annum.

10.     On January 3, 2025, the Debtor filed the operative Notice of Appeal from the Judgments in the Colorado Court of Appeals.

11.     The Debtor's appeal of the Hamp Judgment and the Hayek Judgment was consolidated with the Copeland Appeal, and is currently pending in the Colorado Court of Appeals, Case No. 2024CA001827 (the "Appeals").

12.     The Debtor's Schedules and the claims register in the Bankruptcy Case, indicate that there are approximately $132,000 in unsecured claims (collectively, the "Unsecured Claims") that have been filed against Debtor or otherwise scheduled as undisputed, noncontingent, and liquidated claims, separate and apart from claims asserted by H&H and of the Copeland Claim (defined below).

13.     H&H have filed unsecured proofs of claims in excess of $25 million in the Bankruptcy Case based upon the Judgments (the "H&H Claims").

14.     On November 21, 2025, Copeland amended her previous proof of claim in the Bankruptcy Case from an "unknown" amount to assert a priority claim under Section 507(a)(1)(A) of the Bankruptcy Code in the amount of $1,631,485.50 (the "Copeland Claim").  *See* Claim No. 3-1.

15.     On December 3, 2025, Hayek filed a *Notice of Filing Exemplified Foreign Judgment* in the Circuit Court of the First Circuit, State of Hawaii, which registered the Copeland Judgment.  *See* 1CSP-25-0000496.  The Debtor is informed that the Copeland Judgment, with interest accrual, is now in excess of $1.5 million.  Hayek has indicated she will be making demand on the estate to pay

all monies that are payable to Copeland, up to the amount of the Copeland Judgment, to Hayek. Thus, even if the Copeland Claim were allowable in the amount filed, virtually all of those funds would be payable to Hayek.

16. Copeland entered into a premarital agreement with Debtor with an effective date of July 18, 2018 (the "Premarital Agreement"), the validity and enforceability of which is the subject of a domestic relations proceeding commenced post-petition by Copeland against Debtor in La Plata County, Colorado District Court, Case No. 2025DR2088 (the "Colorado Divorce Court"). On December 2, 2025, the Colorado Divorce Court scheduled, (a) for March 25, 2026, "a full day hearing on whether the Prenuptial Agreement is an invalid agreement for reasons other than unconscionability;" and (b) for April 7, 2025[sic], "a half day hearing on whether to award temporary maintenance . . . ." *See* <u>Exhibit B</u> (minute order dated December 2, 2025, "Minute Order").

17. Debtor has withdrawn his Third Amended Plan of Reorganization dated as of September 29, 2025. *See* dkt # 246.

18. H&H have proposed an Amended Combined Disclosure Statement and Chapter 11 Plan for Debtor ("H&H Plan"). The H&H Plan provided Copeland with the right to be paid in full under the Premarital Agreement in satisfaction of her claims to seek to set aside that agreement. Copeland voted to reject the H&H Plan.

19.     Subject to Bankruptcy Court approval, the Parties have entered into the Agreement, which if approved, will moot the H&H Plan.  The settlement is intended to resolve the Judgments and save the Parties from further expense and litigation attendant to the Appeals.

## III.    <u>MATERIAL TERMS OF THE SETTLEMENT</u>

20.     The material terms of the Agreement are summarized as follows:

i.      <u>Settlement Payment</u>.  In full satisfaction of the Judgments and H&H Claims, the Debtor will pay $20,000,00.00 to H&H within ten (10) calendar days of when the Approval Order becomes a final order.

ii.      <u>Payments to General Unsecured Creditors</u>. The Unsecured Claims shall be paid in full, plus interest at the federal discount rate from and after the date they became due.

iii.      <u>Withdrawal of H&H Claims and Appeals Proceeding</u>. Within ten (10) calendar days after the Payment is made, (a) H&H will withdraw the H&H Claim with prejudice, and (b) the Parties will stipulate to dismiss the Parties' Claims in the Appeals with prejudice, provided that such dismissal will not apply to the Copeland Appeal. and all motions and oppositions filed in the Debtor's Bankruptcy Case. Within ten (10) calendar days after

6

the Payment is made and the entry of a final Approved Order,

H&H will file a Satisfaction of Judgments in the State Court

Case.

## IV.   RELIEF REQUESTED AND BASIS

### A.   THE AGREEMENT SHOULD BE APPROVED AS FAIR AND EQUITABLE

17.    The Agreement should be approved pursuant to Bankruptcy Rule

9019 which provides in relevant part, that "on motion by the trustee and after

hearing on notice to creditors … the court may approve a compromise or

settlement."  Fed.R.Bankr.P. 9019(a).

18.    Under the standards established by the Ninth Circuit, the Court should

approve a compromise or settle if it is "fair and equitable."  *Woodson v. Fireman's*

*Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9thCir. 1988); *In re A&C*

*Properties*, 784 F.2d 1377, cert. denied, sub nom., *Martin v. Robinson*, 479 U.S.

854 (1986).  In evaluating the fairness of a compromise or settlement, "a trial or

'mini-trial' on the merits is not required."  *Official Committee of Unsecured*

*Creditors v. James Talcott, Inc. (In re International Distrib. Centers, Inc.)*, 103

B.R. 420 423 (S.D.N.Y. 1989).  Rather, the Court must simply consider the various

factors that determine the reasonableness of the compromise.  *In re A&C*, 784 F.2d

at 1381.  This Court should approve the settlement as long as it is above the

"lowest point of reasonableness."  See *In re International Distrib. Centers, Inc.*, at

423 (citations omitted).

19.     Specific factors to be considered in determining whether a compromise or settlement is fair and equitable include: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors and a proper deference to the reasonable views of parties having a paramount interest. *In re Woodson*, 838 F.2d at 620 (citation omitted).

20.     The proposed Agreement is fair and equitable and satisfies the foregoing standards.  With respect to the first and third factors, each party believes they have factual and legal arguments in support of their claims or defenses such that the outcome of the Appeals is uncertain.  However, even if the Court of Appeals were to vacate the Judgments, a new trial would be both very inconvenient and expensive for all Parties.  Prepetition, the Debtor incurred over $2 million in legal fees.  A new trial before another jury would cost seven figures for the Debtor alone.

21.     With respect to the second factor (difficulties in collection), H&H assert that their Judgements, with post-petition interest, exceed $28 million.  However, they cannot collect this sum until and unless the Maui property is sold.  The settlement amount is substantially less than the total amount being asserted by

U.S. Bankruptcy Court - Hawaii   #24-00634   Dkt # 247   Filed  12/15/25   Page 8 of 27

H&H and constitutes prima facie evidence of the reasonableness of the proposed settlement from the perspective of the Debtor as well as H&H. With respect to the fourth factor (paramount interest of creditors), the settlement is supported by the major creditors in the case, H&H. Creditor support is a factor weighing in favor of approval. *Matter of Foster Mortgage Corp.*, 68 F. 3d 914, 917-18 (5th Cir. 1995) (court should carefully consider wishes of majority of creditors).

22.     In evaluating the fairness of a compromise or settlement, "a trial or 'mini-trial' on the merits is not required." *Official Committee of Unsecured Creditors v. James Talcott, Inc. (In re International Distrib. Centers, Inc.),* 103 B.R. 420, 423 (S.D.N.Y. 1989). Rather, the Court must simply consider the various factors that determine the reasonableness of the compromise. *In re* A&C, 784 F.2d at 1381. This Court should approve the settlement as long as it is above the "lowest point of reasonableness." *See In re International Distrib. Centers, Inc.*, at 423 (citations omitted). Finally, great judicial deference should be given to the debtor's exercise of business judgment. *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 314 (Bankr. S.D. Tex. 2024). The Debtor submits that the Agreement, which settles the Judgments for $20 million, is well within the lowest point of reasonableness.

B.     <u>THE CHAPTER 11 CASE SHOULD BE DISMISSED</u>

23.     The Agreement also contemplates dismissal of this Bankruptcy Case

after the Debtor makes the Payment to H&H and pays Unsecured Claims. *See* Agreement at ¶ 5.

24. Bankruptcy Code Section 1112 provides in relevant part as follows:

> (b) (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added).

25. Courts have wide discretion in acting upon a request for dismissal. *In re Kimble*, 96 B.R. 305, 307 (Bankr. D. Montana 1988) (citations omitted). A debtor's request should "ordinarily be granted unless some 'plain legal prejudice' will result to the creditors." *Id*. at 309 (citing *In re Hall*, 15 B.R. 913, 915-16 (9th Cir. BAP 1981); see also n re Bartee, 317 B.R. 362, 366 (B.A.P. 9th Cir. 2004) ("A debtor's motion to dismiss is committed to the bankruptcy court's discretion… Dismissal is generally granted unless dismissal will cause legal prejudice to interested parties.")

26. Cause exists to dismiss this Bankruptcy Case. If the Agreement is approved, the only other creditor will be Christine Copeland, his estranged wife. She may object to dismissal of the Bankruptcy Case but she will not be prejudiced.

10

27.     First, the Agreement specifies that it:

does not seek to limit or restrict in any manner any and all claims that
Copeland can assert against Debtor in any other forum.  The Agreement
does not limit Copeland's right to proceed with legal challenges to the
enforceability of the Premarital Agreement in Colorado or any other
proceeding. The Agreement is without prejudice to Copeland's right to seek
support obligations in pending divorce proceedings in Colorado State Court,
and Copeland can assert any and all rights to payment with respect to all
remaining assets of Debtor following dismissal of the Bankruptcy Case.

*See* Agreement at ¶ 4.b.

28.     Second, the Debtor will have ample resources to pay the Copeland

Claim (which he disputes), even if liquidated by the Colorado Divorce Court in the

full amount.  The Debtor currently has approximately $21.94 million in liquid

assets in his brokerage accounts and DIP operating account.  The Debtor also owns

fund investments that are worth approximately $240,000, even in a liquidation.

*See* dkt # 201 at 53 (liquidation analysis).  Furthermore, he owns two properties,

free and clear of liens, the Maui property which has an estimated liquidation value

of $7 million and is currently on the market, and his residence in Durango,

Colorado, which he purchased last summer for $1,720,740.  *See* dkt # 201 at 53

(liquidation analysis) and dkt # 29 at 11 (Schedule A/B).

29.     Third, claims for domestic support obligations ("DSOs")[2] arise under

---

[2] Sections 523(a)(5) and (15) of the Bankruptcy Code provide that the DSOs are not
dischargeable.  *See* 11 U.S.C. 523(a)(5) and (a)(15) (excepting from discharge alimony, support
and any debt "to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor
in the course of a divorce or separation or in connection with a separation agreement, divorce
decree, or other order of the court.").

11

state law and are fully adjudicable before the Colorado Divorce Court. Indeed, bankruptcy courts uniformly recognize that state family courts are the proper forum for determining marital dissolution issues. *See, e.g., In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985) ("[T]he bankruptcy court should avoid incursions into family law matters."). This Court should defer to the expertise of the Colorado Divorce Court.

30. Fourth, Copeland will have her day(s) in the Colorado Divorce Court soon enough as indicated by the Minute Order.

31. Finally, a spouse's right to collect DSOs are arguably stronger outside of bankruptcy. While enforcement of DSOs is generally excepted from the automatic stay, the pendency of this Bankruptcy Case would impede Copeland's ability to collect as against property of the estate if the case is not dismissed.

## V.   **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

1. Approving the Agreement;

2. Dismissing this Bankruptcy Case in accordance with the terms of the Agreement; and

3. Granting such other and further relief as may be appropriate.

DATED:  Honolulu, Hawaii, December 15, 2025

Respectfully submitted,

/s/ Chuck C. Choi
Chuck C. Choi
Allison A. Ito
Attorneys for Debtor and
Debtor-in-Possession

13

# EXHIBIT A

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT (this "Agreement") is entered into by and between STEVEN KARL HERRON, in his capacity as debtor and debtor-in-possession ("Debtor") of the bankruptcy estate (the "Estate"), and creditors, KENNETH WAYNE HAMP ("Hamp") and CYNTHIA HAYEK ("Hayek") (collectively, "H&H") effective as of November 23, 2025 (the "Effective Date"). The Debtor and H&H may hereinafter be referred to individually as a "Party" and collectively as the "Parties."

**RECITALS**

**PROCEDURAL BACKGROUND**

A.     In the Routt County, Colorado District Court, Case Nos. 2020CV300700 and 2021CV000008 (collectively, the "State Court Case"), on July 1, 2024, a comprehensive order (the "July 1 Order") was issued in favor of H&H and against Debtor.

B.     On July 9, 2024, Debtor filed a Notice of Appeal from the July 1 Order.

C.     On July 15, 2024, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii, Case No. 24-00634 (the "Bankruptcy Case").

D.     On August 30, 2024, an Amended Final Judgment was entered in the State Court Case in favor of Hayek and against Christine Copeland ("Copeland") awarding prejudgment interest through July 1, 2024, in the amount of $458,866.89 for a total award in favor of Hayek in the amount of $1,458,866.89 (the "Copeland Judgment").

E.     On October 23, 2024, Copeland filed a Notice of Appeal of the Copeland Judgment, which was assigned case number 2024CA1827 (the "Copeland Appeal").

F.     The Parties entered into a court approved stipulation for relief from the automatic stay in the Bankruptcy Case to allow the State Court Case and related appeals to proceed.

G.     On November 21, 2024, an amended final judgment was entered in favor of Hamp and against Debtor in the State Court Case in the amount of $9,950,076.24 (the "Hamp Judgment"), and  on December 30, 2024, a second amended judgment  was entered in the State Court Case in favor of Hayek and against Debtor in the amount of $15,834,099.59 (the "Hayek Judgment", together the "Judgments"). The Judgments are accruing post-judgment interest, currently at the rate of 7% per annum.

H.     On January 3, 2025, Debtor filed the operative Notice of Appeal from the Judgments.

I.     Debtor's appeal of the Hamp Judgment and the Hayek Judgment was consolidated with the Copeland appeal and is currently pending in the Colorado Court of Appeals, Case No. 2024CA001827 (the "Appeals"). Briefing is complete; the Parties are awaiting a decision from the Court of Appeals regarding whether it will hold oral argument before issuing an opinion.

J.     Based on the Bankruptcy Schedules and the claims register in the Bankruptcy Case, there are approximately $132,000 in unsecured claims (collectively, the "Unsecured Claims") that have been filed against Debtor or otherwise scheduled as undisputed, noncontingent, and liquidated claims, separate and apart from claims asserted by H&H and of the Copeland Claim (defined below).

K.     H&H have filed unsecured proofs of claims in excess of $25 million in the Bankruptcy Case based upon the Judgments (collectively, the "H&H Claims").

L.     On November 21, 2025, Copeland amended her previous proof of claim in the Bankruptcy Case in an "unknown" amount to assert a priority claim under Section 507(a)(1)(A) of the Bankruptcy Code in the amount of $1,631,485.50 (the "Copeland Claim"). See Claim No. 3-1. Copeland entered into a premarital agreement with Debtor with an effective date of July 18, 2018 (the "Premarital Agreement"), the validity and enforceability of which is the subject of a domestic relations proceeding commenced post-petition by Copeland against Debtor in La Plata County, Colorado District Court, Case No. 2025DR2088.

M.     Wells Fargo Bank, N.A. ("Bank") held a secured claim against Debtor of approximately $3 million which was satisfied as a result of the Bank's setoff against the Debtor's brokerage accounts pursuant to 362(b)(6) of the Bankruptcy Code.

N.     Debtor has proposed a Third Amended Plan of Reorganization dated as of September 29, 2025 ("Debtor's Plan").

O.     H&H have proposed an Amended Combined Disclosure Statement and Chapter 11 Plan for Debtor ("H&H Plan"). The H&H Plan provided Copeland with the right to be paid in full under the Premarital Agreement in satisfaction of her claims to seek to set aside that agreement. Copeland voted to reject the H&H Plan.

P.     The Parties acknowledge that as of the Effective Date, they are not aware of any unasserted claims against any of the Parties for slander or defamation.

2

Q.     The Parties now desire to settle all of their disputes pertaining to the Judgments, Appeals, and H&H Claims.

NOW THEREFORE, in consideration of the foregoing recitals and of the mutual agreements, covenants, and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, the Parties agree as follows:

**AGREEMENT**

**1.     RECITALS**

The above recitals are true to the Parties' knowledge, are an integral part of this Agreement, and are incorporated herein by this reference.

**2.     BANKRUPTCY COURT APPROVAL**

This Agreement is subject to, and expressly conditioned upon, entry of an order by the Bankruptcy Court or another court of competent jurisdiction approving this Agreement (an "Approval Order") that becomes a final order. For purposes of this Agreement, an Approval Order becomes a final order if it has not been reversed, stayed, modified, or amended and is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding or other proceeding for review or rehearing shall then be pending. In their sole and absolute discretion, H&H have the right to waive the requirement that the Approval Order be a final order, which determination shall be binding on Debtor and the Estate. As soon as reasonably practical after Debtor's receipt (through counsel identified below) of a fully-executed copy of this Agreement, but not later than November 30, 2025,  Debtor will prepare and file with the Bankruptcy Court a motion for approval of this Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion"). The 9019 Motion and the Approval Order shall be acceptable to H&H in their sole discretion. In the event the Bankruptcy Court or another court of competent jurisdiction denies the 9019 Motion or fails to enter the Approval Order within sixty (60) calendar days after the filing of the 9019 Motion (the "Order Entry Deadline"), this Agreement will become null and void, ab initio, and the Parties will revert to their same positions as existed immediately before they executed this Agreement and as if this Agreement was never entered into by the Parties.  The Order Entry Deadline may be extended, in writing by the Parties.. Despite the foregoing, Debtor must make all good faith efforts to file and obtain approval of the 9019 Motion as soon as practicable.

### 3. PAYMENT TO H&H

In full satisfaction of the Judgments and H&H Claims, Debtor shall remit the sum of Twenty Million Dollars ($20,000,000.00) (the "Payment") to H&H within ten (10) calendar days of when the Approval Order becomes a final order, according to wire instructions to be provided by H&H. The Parties acknowledge and agree that time is of the essence with respect to the Payment.

### 4. PAYMENTS TO OTHER CREDITORS

Within ten (10) days of the Payment, Debtor shall make the following payments:

a. The Unsecured Claims will be paid in full, plus interest at the federal discount rate from and after the date they became due.

b. This Agreement does not seek to limit or restrict in any manner any and all claims that Copeland can assert against Debtor in any other forum. Nothing contained in this Agreement shall limit Copeland's right to proceed with legal challenges to the enforceability of the Premarital Agreement in Colorado or any other proceeding. This Agreement is without prejudice to Copeland's right to seek support obligations in pending divorce proceedings in Colorado State Court, and Copeland can assert any and all rights to payment with respect to all remaining assets of Debtor following dismissal of the Bankruptcy Case.

### 5. DISMISSAL OF BANKRUPTCY CASE

After making the Payment and whatever payments are to be made to other creditors as provided for in section 4 herein, Debtor shall pay all administrative expenses approved by the Bankruptcy Court and the Bankruptcy Case will be dismissed. This Agreement will remain operative, shall survive, and will be in full force and effect notwithstanding the dismissal of the Bankruptcy Case. The Parties agree that even if the Approval Order or any confirmation order under the H&H Plan is vacated or reversed on appeal pursuant to a final order, H&H shall not enforce or collect on the Judgments provided Debtor (and Plan Administrator) shall not seek to recover the Payment.

### 6. WITHDRAWAL OF H&H CLAIMS AND APPEALS

a. Within ten (10) calendar days after the Payment is made, H&H shall withdraw the H&H Claim with prejudice;

b.      Within ten (10) calendar days after the Payment is made, the Parties shall stipulate to dismissal of the Parties' claims in the Appeals, pursuant to Colorado A.R. 42, with prejudice, provided that such dismissal will not apply to the Copeland Appeal; and

c.      Within ten (10) calendar days after (a) the Payment is made, and (b) the entry of a final Approval Order, H&H shall file a Satisfaction of the Judgments in the State Court Case.

### 7.      CONFIRMATION OF H&H PLAN

In the event the Bankruptcy Court does not enter the Approval Order by the Order Entry Deadline, confirmation of the H&H Plan will be sought, Debtor will withdraw his objection thereto and will support the H&H Plan, and said plan will be modified as follows:

a.      Sections 2, 3, 6, and 8 shall be included in the H&H Plan to address payment of the H&H Claims and dismissal of the Parties' claims in the underlying Appeals with prejudice.

b.      Rick Robinson shall be appointed as Plan Administrator.

### 8.      COVENANT NOT TO SUE

The Parties hereby covenant and agree that they will forever refrain and forbear from commencing, instituting, or prosecuting any lawsuit, action, or another proceeding against each other, based on, arising out of, or in connection with the H&H Claims or for any other claims that existed as of the Effective Date, based upon disclosures made by Debtor in his monthly operating reports.  The Parties agree that the covenant not to sue shall not apply to the ongoing domestic relations litigation in the Routt County, Colorado District Court, Case No. 2015DR030007 ("Divorce Case"). In the event such a lawsuit, action, or other proceeding is commenced despite the covenant and agreement in the preceding sentence, each defending Party will have the right to assert such appropriate defenses and claims as are available under applicable law including the agreements, releases, and covenants contained in this Agreement. Despite the foregoing, nothing contained in this Agreement will preclude the Parties from exercising their respective rights under or enforcing the terms of this Agreement. This provision in no ways restricts the right of H&H to enforce the Copeland Judgment or proceed with the Copeland Appeal.

**9.     REPRESENTATIONS AND WARRANTIES**

**9.1     NO UNDISCLOSED INDUCEMENTS.** The Parties represent that they have entered into this Agreement in reliance on their investigation and that no representations, warranties, or promises other than those outlined in this Agreement were made by the Parties or their agents, employees, or counsel to induce either Party to enter into this Agreement.

**9.2     REPRESENTATION BY COUNSEL**. Each Party represents that he, she, or it has obtained independent legal advice concerning this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom. The Parties acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

**10.     GENERAL PROVISIONS**

**10.1   INTEGRATION.** This Agreement sets forth the entire agreement between the Parties about the subject matter hereof and no change, modification, amendment, termination, or discharge of this Agreement will be binding unless made in writing and executed by both of the Parties. All agreements, covenants, representations, and warranties, express or implied, oral and written, of the Parties about the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties concerning the subject matter hereof are waived, merged herein, and superseded hereby and thereby.

**10.2   NO THIRD-PARTY BENEFICIARIES.** This Agreement is not for the benefit of any person who is not a Party to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement are not intended to affect the rights of any party or non-party against any person or entity who is not a Party to this Agreement or who is not specifically named as a beneficiary in this Agreement.  This Agreement is not intended to be and is not to be construed as an amendment, alteration, or supplement to the Transition Agreement. Copeland is not a beneficiary under this Agreement.

**10.3   ATTORNEYS' FEES.**     Each Party shall bear its own attorney fees and costs. Concerning any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages because of any alleged breach of any provisions

of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party will be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, his/her reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

**10.4 SURVIVAL.** It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith. All representations, warranties, and covenants herein will survive the execution of this Agreement.

**10.5 FURTHER DOCUMENTATION.** Following the date hereof, the Parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**10.6 GOVERNING LAW.** This Agreement and the rights and obligations of the Parties hereunder are to be construed, interpreted, and enforced by the laws of the State of Colorado.

**10.7 JURISDICTION.** In the event a dispute arises under this Agreement, the Bankruptcy Court has exclusive jurisdiction to interpret and enforce this Agreement.

**10.8 INTERPRETATION.** This Agreement is to be treated as jointly drafted and will not be construed against any Party as drafter. Furthermore, in the event of any ambiguity or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**10.9 MEANING OF PRONOUNS AND EFFECT OF HEADINGS.** As used in the Agreement and attached exhibits, the masculine, feminine, and/or neuter gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the Agreement.

**10.10 COUNTERPARTS AND ELECTRONIC SIGNATURES.** This Agreement may be executed in multiple counterpart copies, each of which will be deemed an original, but all of which together constitute one agreement. A signature sent and received by email or other electronic means such as DocuSign constitutes an original signature for purposes of this Agreement. An electronic signature constitutes an original signature for purposes of this Agreement.

**10.11 SEVERABILITY.** If any covenant, condition, or other provision contained in this Agreement is held to be invalid, void, or illegal by any court of competent jurisdiction, the same will be deemed severable from the remainder of this Agreement and will in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof. If such condition, covenant, or other provision is deemed invalid due to its scope or breadth, such covenant, condition, or other provision will be deemed valid to the extent that the scope or breadth is permitted by law.

**10.12 WAIVER.** No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach of any provision hereof will not be deemed to be a waiver of any other breach of the same or any other provision of this Agreement. No failure or delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, will operate as a waiver of any other rights hereunder, nor will any single exercise by any Party of any right hereunder preclude any other or further exercise thereof. The rights and remedies provided in this Agreement are cumulative and not exclusive of any right or remedies provided by law.

**10.13 BINDING ON SUCCESSORS.** This Agreement is binding upon and inures to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

**10.14 NO ASSIGNMENTS OR DELEGATION OF RIGHTS.** No Party has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

**10.15 NOTICES.** Any notices to be provided under this Agreement must be sent by email with a copy by first class mail as follows:

    (a)    **If to Debtor:**

        Choi & Ito
        Chuck C. Choi
        Allison A. Ito
        700 Bishop Street, Suite 1107
        Honolulu, Hawaii 96813
        Email: cchoi@hibklaw.com;
                aito@hibklaw.com

U.S. Bankruptcy Court - Hawaii   #24-00634   Dkt # 247   Filed 12/15/25   Page 22 of 27

**If to Hamp and Hayek**:

Howard J. Steinberg
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
steinbergh@gtlaw.com

**10.16 NO ADMISSION.** This Agreement represents a compromise of claims in he Bankruptcy Case and is not to be construed in any legal proceeding as in any way modifying, vacating, or compromising the findings of fact and verdicts in the State Court Case or post-verdict rulings in the Divorce Case.

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the date of final signature below, and to be effective as of the Effective Date.

_____

Steven Karl Herron

Date: November 23, 2025

_____

Kenneth Wayne Hamp

Date: Nov 23 2025

_____

Cynthia Hayek

Date: NOV. 23, 2025

9

# EXHIBIT B

Status:
Case #:  2025 DR 002088    Div/Room:  1    Type: Dissolution of Marriage
         HERRON, CHRISTINE COPELAND and HERRON, STEVEN KARL

| FILE DATE | EVENT/FILING/PROCEEDING |
| --- | --- |
| 12/02/2025 | **Minute Order (print)** |

JUDGE:  JRW        CLERK:        REPORTER:

<span style="color:blue">DATE FILED
December 2, 2025 9:58 AM
CASE NUMBER: 2025DR2088</span>

JRW/SLA 120225 NO RECD;
MR ECKELBERRY APPEARS WITH HIS CLIENT MS COPELAND BOTH BY PHONE;
MS ANDERSON AND MR KOFOED APPEAR ON BEHALF OF MR HERRON BOTH BY PHONE;
SETTING CONFERENCE HELD;
CASE IS SET FOR A FULL DAY HEARING ON WHETHER THE PRENUPTIAL AGREEMENT IS
AN INVALID AGREEMENT FOR REASONS OTHER THAN UNCONSCIONABILITY ON 032526 AT
0900AM;
CASE IS SET FOR A HALF DAY HEARING ON WHETHER TO AWARD TEMPORARY MAINTENANCE
ON
040725 AT 0130PM;
XC PARTIES                                                          /SLA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re:

STEVEN KARL HERRON,


    Debtor and Debtor-in-
    Possession.

Bk. No. 24-00634
(Chapter 11)

## DECLARATION OF STEVEN K. HERRON

I, STEVEN K. HERRON, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

1.      I am the debtor and debtor-in-possession in the above-referenced proceeding.   I am over the age of 18 years and I am competent to make this declaration and do so based on personal knowledge, except as otherwise indicated.

2.      I make this declaration in support of *Motion For Order Approving Settlement Agreement* (the "Motion").

3.      Terms used herein and not otherwise defined shall have the meanings given them in the Motion.

4.      Attached to the Motion as <u>Exhibit A</u> is a true and correct copy of the signed Agreement.

1

5.      Attached to the Motion as <u>Exhibit B</u> is a true and correct copy of the Minute Order.

6.      In the exercise of my business judgment, I believe it is in the best interest of my bankruptcy estate and creditors for me to enter into the attached Agreement.  The disputes between myself and H&H go back at least five years.  Prepetition, I incurred millions of dollars in legal fees in litigation against H&H.  If the litigation were to continue, I would continue to incur substantial legal fees in litigation against H&H.  The proposed settlement, if approved, will permit the estate to pay H&H $20 million, pay off all general, unsecured creditors holding allowed claims promptly, while permitting Christine Copeland to pursue her claims in the Colorado Divorce Court.

7.      There is sufficient liquidity in the estate to make the payment to H&H and general unsecured creditors and enough assets to pay Christine Copeland even if her claim is liquidated by the Colorado Divorce Court as filed.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated: Durango, Colorado, December 15, 2025.


/s/ Steven K. Herron
Steven K. Herron