CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
cchoi@hibklaw.com
aito@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re:<br><br>STEVEN KARL HERRON,<br><br>Debtor and Debtor-in-Possession. | Bk. No. 24-00634<br>(Chapter 11)<br><br>Hearing:<br>Date: August 10, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris |

MOTION FOR ORDER (I) DISMISSING CHAPTER 11 CASE; AND (II) APPROVING PROCEDURES FOR DISMISSAL; EXHIBITS A-D; DECLARATION OF STEVEN K. HERRON

STEVEN KARL HERRON, the debtor and debtor-in-possession herein (the "Debtor"), and pursuant to 11 U.S.C. §§ 105 and 1112, Federal Rules of Bankruptcy Procedure Rules 1017 and 2002, hereby moves this Court for an order approving the (i) dismissal of his chapter 11 case; (ii) approving procedures for dismissal,



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 1 of 78

including (a) payment of his undisputed pre-petition creditors as set forth herein, and (b) approving the form of a mortgage (the "Mortgage") on his real property bearing street address 94 Keoawa Place, Lahaina Hawaii 96761 (the "Kapalua Property") to provide "adequate protection" to secure his obligations to Christine Copeland fka Chrisine Loeb ("Copeland"), substantially in the form attached hereto as Exhibit "A"; and (iii) granting such other relief as may be just and equitable. In support of this motion, the Debtor respectfully represents as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

3. On July 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Hawaii (the "Court").

4. Pursuant to the *Notice of Chapter 11 Bankruptcy Case* issued on July 16, 2024, the last day for creditors to file pre-petition unsecured claims against the Debtor was fixed as November 18, 2024. *See* ECF 4.

5. The Debtor filed his petition after judgments totaling approximately $17 million were issued against him and in favor of his ex-wife Cynthia Hayek ("Hayek") and Kenneth Hamp ("Hamp"; with Hayek, "H&H") in the Routt County, Colorado District Court, Case Nos. 2020CV300700 and 2021CV000008 (together, the "State Court Case").[1]

6. As of the Petition Date, the Debtor had been separated from his second wife, Christine Copeland fka Christine Loeb ("Copeland") for nearly two years (since November, 2022) when Copeland moved back to Colorado.[2]

7. On the Petition Date, the Debtor was living with his three minor children in the Kapalua Property. He has since relocated his family to Durango, Colorado.

8. On August 12, 2024, the Debtor filed his Schedules and Statement of Financial Affairs. *See* ECF 29. As of the Petition Date, the Debtor held (through his revocable trust) approximately $24.1 million in two brokerage accounts. Id. at 6/56. He also listed the Kapalua Property, which he valued at approximately $8 million (Id. at 3/56) and identified his interest in real property located at 199 Cabin

[1] On November 21, 2024, an amended final judgment was entered in favor of Hamp in the State Court Case in the amount of $9,950,076.24, and on December 30, 2024, a second amended judgment was entered in the State Court Case in favor of Hayek and against Debtor in the amount of $15,834,099.59 (the "H&H Judgments").

[2] Steve Herron and Christine Copeland (and their children from prior marriages) cohabitated for approximately four years and four months. *See* Exhibit "C" at ¶ 4.

Creek Drive, Durango Colorado 81301 (the "Durango Property")[3] which he purchased for $1,720,739.97. *Id*. at 11/56. The Debtor also owns Peru Holdings LLC, which was formed in April, 2012, to hold title to a residential property located at 268 W. Lovers Lane Road, Peru, IN, that he valued at approximately $200,000. *Id*. at 7/56. None of the above real properties are encumbered.

9. In addition to claims filed by H&H and Copeland, approximately $131,994.49 in total unsecured claims were scheduled as undisputed, noncontingent, and liquidated claims or have been filed against the Debtor (collectively, the "Unsecured Claims"). *See* ECF 29 at Schedule E/F and Claims Register.

10. On October 29, 2024, Copeland filed proof of claim number 3 ("Copeland Claim") purporting to assert a claim in an amount "TBD" for "Spousal support, property division, other claims – TBD." *See* Claim No. 3. The Copeland Claim purported to be entitled to priority under Section 507(a). *Id*.

11. On November 14, 2024, Hayek filed proof of claim number 6 as a general unsecured proof of claim in the amount of $17,141,388.8,1 and Hamp filed proof of claim number 5 as a general unsecured proof of claim in the amount of $11,236,700.30. *See* Claim Nos. 5 and 6.

[3] The Debtor moved into the Durango Property in October, 2024. The Kapalua Property is vacant and listed for sale.

12. On November 21, 2025, Copeland amended her proof of claim from an "unknown" amount to assert a priority claim of $1,631,485.50 under Section 507(a)(1)(A) of the Bankruptcy Code. *See* Claim No. 3-1. She asserted the following "Domestic Support obligations":

> 1. $685,681.50 for spousal maintenance: 35 x $19,590.90; this claim is not dependent on the validity of the premarital agreement between Ms. Copeland and the debtor.[4]
>
> 2. $305,804.00 for attorney's fees and costs incurred to date.[5] This claim is based on the attorney's fees and costs incurred by Ms. Copeland for the legal actions relating to: (i) the marital dissolution in both the Hawaii and the Colorado Family Courts, (ii) the civil action by the Hamp & Hayek plaintiffs in the civil action against Ms. Copeland, and (iii) the bankruptcy case.
>
> 3. $640,000.00 for a 40% interest in Alvin TX LLC. The other 60% of this LLC had been transferred by the debtor to Ms. Copeland previously. The Alvin TX LLC was the co-owner of a piece of real property (Seashore Lane), which debtor transferred partially to Ms. Copeland. The debtor had purchased this property as a wedding gift for Ms. Copeland. The real property was later sold and the proceeds used to purchase the property located at 94 Kaoawa Pl, Lahaina, HI 96761 on Maui for $5,000,000.00.[6] Based on

---

[4] Debtor disputes that any maintenance is due since Copeland waived all claims to spousal maintenance under the Premarital Agreement attached hereto as Exhibit "B", at ¶ 6.1 ("we agree that neither of us shall have any claims or rights in the Separate Propoerty of the other or to receive temporary maintenance or maintenance or spousal support from the other, except as provided in this Agreement, and we expressly waive an release all such claims and rights.").

[5] *See* Premarital Agreement at ¶ 6.2.3 (Waiving, "The right to temporary payment of debts, use of Property, temporary maintenance, or payment of attorney fees under Colo. Rev. Stat. § 14-10-114.").

[6] This statement is false. *See* ECF 264-1, Declaration of Steven Karl Herron in support of Objection to Proof of Claim No. 3 at ¶ 10 ("I sold the Seashore Lane lot after I purchased the Lahaina House.")

language in the prenuptial agreement between Ms. Copeland and the debtor, providing a home for a spouse is deemed "in the nature of support".

13. On December 2, 2025, the Colorado Divorce Court scheduled, (a) for March 25, 2026, "a full day hearing on whether the Prenuptial Agreement is an invalid agreement for reasons other than unconscionability;" and (b) for April 7, 2025[sic], "a half day hearing on whether to award temporary maintenance . . . ." *See* Exhibit B to ECF 247 (minute order dated December 2, 2025, attached to Settlement Motion).

14. On December 15, 2025, the Debtor filed his *Motion for Order (I) Approving Settlement Agreement and (II) Dismissing Chapter 11 Case* (the "Settlement Motion"), seeking entry of an order approving a settlement payment of $20 million to H&H in full satisfaction of the H&H Judgments, and for the dismissal of this chapter 11 case, subject to payment of the Unsecured Creditors in full, with interest at the federal discount rate. *See* ECF 247.

15. Copeland filed an *Objection to Debtor's [Settlement Motion]* (the "First Objection") on January 6, 2026, one week after the deadline for responses. *See* ECF 251. As noted by H&H in their reply brief filed on January 8, 2026, the First Objection was not only late, but devoid of any evidentiary support. *See* ECF 252 at 5.

16. One day later, on January 9, 2026, Copeland filed an *Amended Objection to Debtor's [Settlement Motion]* (the "Second Objection"). She

submitted a declaration and a pleading filed by Debtor's divorce counsel in a marriage dissolution case that she commenced post-petition (in March, 2025) in Colorado District Court, as Case No. 2025DR2088 (the "Colorado Divorce Court"). *See* ECF 254-1. Copeland alleged that "Debtor's financial disclosures show that he does not have ample resources to pay me if the bankruptcy case were dismissed." *Id*. at ¶ 7.

17. On January 12, 2026, the Court continued the hearing on the Settlement Motion to February 2, 2026, to permit the parties to have further discussions regarding a consensual dismissal of the case. Unfortunately, the parties were unable to reach agreement. *See* ECF 265 and 266 (status conference reports of Debtor and Copeland).

18. On January 29, 2026, the Debtor filed his *Objection to Proof of Claim No. 3*. *See* ECF 264. Steve Herron signed a declaration in support stating, among other things that:

> Christine and I were married at St Paul's Episcopal Church in Steamboat Springs, Colorado on July 21, 2018 (the 'Marriage Date'). We signed a Premarital Agreement (the 'Agreement') effective as of the Marriage Date which provided for property settlement terms in Christine's favor increasing with each year of marriage. The Agreement stated that we would each waive any right to 'to receive temporary maintenance or maintenance or spousal support from the other . . .' and that 'if Christine seeks an award of maintenance of attorney fees . . . any such award . . . shall be paid as an advance against the property settlement.' Christine was represented by her own counsel regarding the Agreement.

Id. at ¶¶ 3, 4.[7]

19. On February 2, 2026, the Court considered the Settlement Motion, and granted it in part (as to the H&H settlement) but denied it as to the dismissal. *See* ECF 268 (minutes).

20. On February 24, 2026, the Court entered its *Order Granting in Part [Settlement Motion]*. *See* ECF 273.

21. On March 11, 2025, Copeland filed her *Motion for Reconsideration of Order Granting [Settlement Motion]*, purportedly "based on the discovery of newly available evidence . . . ." which she promised to promptly submit. *See* ECF 275 at 2/6.

22. On March 23, 2026, the Court entered its Order denying Copeland's *Motion for Reconsideration of Order Granting [Settlement Motion]* based on the lack of purported new evidence. *See* ECF 279 ("thirteen days have passed and she has filed neither the declaration nor any other evidentiary support.").

23. The Debtor has paid H&H $20 million and H&H have withdrawn their proofs of claim. *See* ECF 280.

24. On May 1, 2026, Hayek filed *Ex Parte Motion for Issuance of*

---

[7] Copeland and Herron entered into a premarital agreement with an effective date of July 18, 2018 (the "Premarital Agreement"). A true and correct copy of the Premarital Agreement is attached hereto as Exhibit "B".



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 8 of 78

*Garnishee Summons and Order for Estate Funds to be Distributed to Christine Copeland* ("Garnishment Motion").[8]

25. On May 18, 2026, the Court held a hearing on the Garnishment Motion, which was not attended by the Debtor. *See* ECF 304.

26. On June 17, 2026, entered its *Order Granting, in Part, Cynthis Hayek's [Garnishment Motion]* ("Garnishment Order"). *See* ECF 309. The Garnishment Order provides that "Debtor STEVEN KARL HERRON shall not make any distributions of funds to CHRISTIN HERRON pending further orders of a state court with jurisdiction over the matter or of this Court . . . ." *Id*. at 2-3.

27. On July 1, 2026, Copeland, through new counsel, filed her *Motion for Reconsideration of [Garnishment Order]*. *See* ECF 319. In support of the reconsideration motion, she suggested that her prior attorney may have failed to submit her redlined comments to the form of the Garnishment Order circulated by Hayek's counsel. *See* ECF 319-2, at ¶ 15.

28. On July 6, 2026, this Court denied the reconsideration motion, and noted that: "The Colorado court, not this court, should decide whether Ms. Copeland's claims against Mr. Herron are or are not subject to garnishment." *See*

[8] On December 3, 2025, Hayek filed a Notice of Filing Exemplified Foreign Judgment in the Circuit Court of the First Circuit, State of Hawaii, which registered her judgment against Copeland. *See* 1CSP-25-0000496. Copeland has appealed the Hayek judgment against her to the Colorado Court of Appeals.

ECF 320 at 2.

29. On March 26, 206, after an evidentiary hearing, the Colorado Divorce Court entered its *Order Regarding Enforceability of Premarital Agreement* ("Premarital Agreement Order"). A true and correct copy of the Premarital Agreement Order is attached hereto as Exhibit "C". The Colorado Divorce Court concluded that:

> 35. After examining all pertinent circumstances, the Agreement is enforceable. Enforcement of the Agreement is **not unconscionable**, as Wife has failed to demonstrate that enforcement would be unfair, unreasonable, or unjust under current circumstances and that she cannot meet her reasonable needs.

*See* Order at ¶ 35 (emphasis supplied). The court vacated the hearing on temporary maintenance. Id. at 12. ("Accordingly, the 04/07/26 hearing regarding temporary maintenance is hereby vacated.").

30. The Colorado Divorce Court specifically found that "Wife's testimony regarding her financial situation was not credible . . . ." (*Id*. at ¶ 21) and noted that "[t]here was no evidence presented at the hearing that the Agreement is not valid, or that it was entered unknowingly, involuntarily or the result of duress." *Id*. at ¶ 1. Finally, the Colorado Divorce Court also found:

> Upon separation, Husband gave Wife $150,000 to 'get set up' on her own. Husband purchased a home in Steamboat Springs for $1.9 million . . . . There is no mortgage or lien on this home and Wife lives there with her child from a prior marriage. Wife is not required to pay anything for living in the home. Husband also gave Wife a 2017 Chevrolet Suburban and under the Agreement Wife is entitled to a

substantial property settlement of roughly $700,000.

*Id*. at ¶ 21 (footnote omitted).[9]

31. On or about May 14, 2026 (49 days after the issuance of the Premarital Agreement Order), Copeland filed a Notice of Appeal from the Premarital Agreement Order to the Colorado Court of Appeals. The appeal is expected to take between 12 months to 18 months to resolve.

## III. RELIEF REQUESTED AND BASIS

### A. DISMISSAL OF THE CASE IS IN THE BEST INTEREST OF CREDITORS AND THE ESTATE

17. The Debtor requests that the Court enter an order dismissing this Chapter 11 case pursuant to Bankruptcy Code Section 1112, which provides in relevant part as follows:

> (b) (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added).

18. This Court has "wide discretion" to find cause for dismissal under 11

---

[9] The Debtor notes that this amount will be adjusted downward because he has incurred hundreds of thousands of dollars litigating the validity and enforceability of the Premarital Agreement.

U.S.C. § 1112(b) based on the totality of the circumstances. *See In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); In re Baroni, 36 F.4th 1198, 1205 (9th Cir. 2022)).

19. Cause exists to dismiss the Debtor's Chapter 11 case as it is in the best interest of creditors and the estate. The Colorado Divorce Court has adjudicated the issue of enforceability of the Premarital Agreement.

20. Copeland is not entitled to a priority (DSO) claim, but a general unsecured claim.[10] *See* Premarital Agreement Order at ¶ 21 ("under the Agreement Wife is entitled to a substantial property settlement of roughly $700,000."); *see also* Premarital Agreement at 6.6 entitled "Property Settlement for Christine". Bankruptcy courts uniformly recognize that state family courts are the proper forum for determining marital dissolution issues. *See, e.g., In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985) ("[T]he bankruptcy court should avoid incursions into family law matters."). This Court should defer to the expertise of the Colorado Divorce Court.

21. Unfortunately, due to the appeal, the Colorado Divorce Court will not be in position to liquidate the amount of the property settlement due to Copeland for another year. This case has already been pending for two years. Unsecured

[10] Regardless, Sections 523(a)(5) and (15) of the Bankruptcy Code provide that the DSOs or support payments are not dischargeable. *See* 11 U.S.C. 523(a)(5) and (a)(15) (excepting from discharge alimony, support and any debt "to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of the court.").

Creditors should not be forced to wait until 2028 before payment. The Debtor proposes to "adequately protect" his estranged wife Christine Copeland by granting her a Mortgage on his unencumbered Kapalua Property for the full amount of the alleged Copeland Claim.[11]

22. There will be no prejudice to Copeland from dismissal. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) is not violated by the proposed structured dismissal. There will be no "priority skipping" if the Motion is granted. The alleged priority Copeland Claim will be fully protected pending the entry of a final order of the Colorado Divorce Court.

23. Furthermore, there are disputes between two non-debtor parties (Hayek and Copeland) that this Court should not adjudicate. Steve Herron, Christine Copeland and Cynthia Hayek all reside in Colorado. They should litigate their differences in Colorado.

24. Finally, the Debtor requests that, any order of dismissal also provide that notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules to the contrary, including, without limitation, Section 349 of the Bankruptcy Code, all prior orders, findings, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of

[11] The County of Maui has recently valued the Kapalua Property for tax assessment purposes in the gross amount of $6,308,700.

this chapter 11 case, including, without limitation, the Settlement Order, shall remain in full force and effect, shall be unaffected by the dismissal of the case, and are specifically preserved for purposes of finality of judgment and res judicata as set forth in the proposed order, attached hereto as Exhibit "D."

## IV. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order: (a) dismissing this chapter 11 case; (b) approving the form of Mortgage and its recordation as a condition to dismissal; (c) authorizing the payment of the Unsecured Creditors in full, with post-petition interest at the federal discount rate as a condition to dismissal; and (d) granting such other and further relief as may be appropriate.

DATED: Honolulu, Hawaii, July 13, 2026

Respectfully submitted,

/s/ Chuck C. Choi
Chuck C. Choi
Allison A. Ito
Attorneys for Debtor and
Debtor-in-Possession

# EXHIBIT A

AFTER RECORDATION, RETURN BY MAIL ( ) PICK UP ( )
Christine Copeland

Total pages: ____

TITLE OF DOCUMENT:

MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT
OF LEASES AND RENT AND FINANCING STATEMENT

PARTIES TO DOCUMENT:

| | |
|---|---|
| MORTGAGOR: | STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018, with full power to sell, convey, mortgage, lease, etc. |
| MORTGAGEE: | CHRISTINE COPELAND (also known as / formerly known as CHRISTINE COPELAND HERRON) |

PROPERTY DESCRIPTION:

94 Keoawa Place, Lahaina, HI 96761

TAX MAP KEY NO.: (2) 4-2-008-0009



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 16 of 78

**MORTGAGE,**
**SECURITY AGREEMENT AND FIXTURE FILING**

THIS MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING ("Security Instrument") is made as of August __, 2026, by and between STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018, with full power to sell, convey, mortgage, lease, etc, whose mailing address is 199 Cabin Creek Drive, Durango, Colorado ("Mortgagor"), and in favor of CHRISTINE COPELAND (also known as / formerly known as CHRISTINE COPELAND HERRON) ("Copeland" or "Mortgagee"), whose mailing address is 1773 Meadow Lane, Steamboat Springs, Colorado 80487.

**BACKGROUND**

WHEREAS, Steven Karl Herron ("Herron") and Christine Copeland entered into a Premarital Agreement effective as of July 21, 2018 (the "Premarital Agreement"), which contains a property settlement payment provision in the event Herron and Copeland divorce and waiver of any spousal maintenance (the "Property Settlement Provision");

WHEREAS, Herron is the settlor and the trustee of the Mortgagor, as well as the debtor and debtor-in-possession in the chapter 11 case pending in the United States Bankruptcy Court, District of Hawaii, as Bk. No. 24-00634 (the "Chapter 11 Case");

WHEREAS, Herron and Copeland are presently parties to a divorce proceeding in the action styled *Christine Copeland Herron v. Steven Karl Herron*, Case No. 25DR2088 (the "Divorce Proceeding"), commenced by Copeland in the District Court, La Plata County, Colorado ("Divorce Court");

WHEREAS, Copeland filed an amended Proof of Claim #3 ("Claim 3") in the Chapter 11 Case asserting she is owed $1,631,485.50 (the "Debt") for alleged "Domestic Support Obligations";

WHEREAS, on January 29, 2026, Herron filed an objection to Claim 3 in the Chapter 11 Case as ECF 264;

WHEREAS, the Divorce Court has jurisdiction to determine the enforceability of the Premarital Agreement and to liquidate the amounts that Copeland may be due from Herron as part of the Divorce Proceeding;

WHEREAS, on March 26, 2026, the Divorce Court entered an *Order Regarding Enforceability of Premarital Agreement* (the "Order Upholding Premarital Agreement") in which the Divorce Court upheld the Premarital Agreement and its Property Settlement Provision;

WHEREAS, on or about May 14, 2026, Copeland appealed the Order Upholding Premarital Agreement to the Colorado Court of Appeal and Herron anticipates that the appeal will take approximately 12-18 months;

WHEREAS, Herron desires to dismiss his Chapter 11 Case and provide for security for repayment of the Debt until the Divorce Court (or other court of competent jurisdiction) enters a Final Order on any amount that is payable by Herron to Copeland in connection with their divorce; and

WHEREAS, until a Final Order regarding the enforceability of the Premarital Agreement is entered, Herron is willing to secure payment of the Debt by granting to Copeland the security described in this Security Instrument.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 17 of 78

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Mortgagor agrees as follows:

## ARTICLE I
## DEFINED TERMS

1.01. Certain Defined Terms. The following capitalized terms used in this Security Instrument shall have the meanings set forth below:

(a) "Governmental Authority" means any government, state or other political subdivision thereof, and ANY Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to such government.

(b) "Final Order" means an order, judgment or decree of a court of competent jurisdiction, including the Divorce Court, and any appellate court of competent jurisdiction, including but not limited to the Colorado Court of Appeals and the Colorado Supreme Court that is final, binding and no longer subject to appeal or modification. An order, judgment, or decree shall be deemed a Final Order if (a) the time to appeal, or seek reargument has expired and no such action has been timely filed, or (b) any appeal taken or petition for review filed has been dismissed or resolved by an appellate court in a manner that upholds the substantive provisions of such order without further possibility of appeal or review.

(c) "Lien" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or otherwise), preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, the filing of any financing statement under the UCC or comparable law of any jurisdiction in respect of any of the foregoing and a mechanics' or materialman's lien).

(c) "Permitted Encumbrances" means (i) easements, restrictions, covenants, rights of way and other exceptions to title affecting the Property created in the ordinary course of business by Mortgagor which do not interfere with the use of the Property in any material respect, and (ii) equipment leases of personal property entered into by Mortgagor in the ordinary course of business.

(d) "Person" means an individual, partnership, limited partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

(e) "Requirements of Law" means any law, regulation, ordinance, code, decree, treaty, ruling or determination of an arbitrator, court or other Governmental Authority, in each case applicable to or binding upon Mortgagor or the Property, including, without limitation, laws, ordinances and regulations pertaining to zoning, occupancy, environmental hazards and subdivision of real property.

(f) "Taxes" means all real estate taxes, government assessments or impositions, lienable water charges, lienable sewer rents, assessments due under owner association documents, ground rents, and all other governmental or similar charges, now or hereafter levied or assessed against the Land and Improvements.

(g) "UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of Hawaii.

## ARTICLE II
## GRANT OF SECURITY



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 18 of 78

2.01. Property Mortgaged. Mortgagor does hereby irrevocably deed, mortgage, grant, bargain, sell, assign, pledge, warrant, transfer and convey to Mortgagee, as security for Herron's obligations to repay the Debt and to perform and observe the terms and conditions of this Security Instrument (collectively, the "Obligations"), the following property, rights, interests and estates, now owned or hereafter acquired by Mortgagor (collectively, "Property"):

(a) Land. The land described in Exhibit A attached hereto and made a part hereof, together with all estates and development rights now existing or hereafter acquired for use in connection therewith ("Land");

(b) Improvements. All buildings, structures, improvements and fixtures, if any, now or hereafter erected or located on the Land ("Improvements");

(c) Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Property and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof, and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Property and every part and parcel thereof, with all appurtenances thereto;

(d) Fixtures and Personal Property. All machinery, equipment, fixtures (including, without limitation, all heating, air condition, plumbing, lighting, communications and elevator fixtures), furnishings, building supplies and materials, and all other personal property of every kind and nature whatsoever owned by Mortgagor (or in which Mortgagor has or hereafter acquires an interest) and now or hereafter located upon and used or useable in the present or future operation and occupancy of the Property, if any, along with all accessions, replacements or substitutions of all or any portion thereof (collectively, "Personal Property");

(e) Intentionally omitted;

(f) Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(g) Insurance Proceeds. All proceeds of, and any unearned premiums on, any insurance policies covering the Property, including, without limitation, the exclusive right to receive and apply the proceeds of any claim awards, judgments, or settlements made in lieu thereof, for damage to the Property;

(h) Purchase Agreements. All sale agreements, contracts and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the sale of all or any portion of the Property, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, while an Event of Default (defined below) remains uncured, to receive and collect any sums payable to Mortgagor thereunder;



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 19 of 78

(i) Proceeds. All proceeds and profits arising from the conversion, voluntary or involuntary, of any of the foregoing into cash (whether made in one payment or a stream of payments) and any liquidation claims applicable thereto; and

TO HAVE AND TO HOLD the above granted and described Property unto Mortgagee, and her successors and assigns, with power of sale in accordance with the terms and conditions hereof.

2.02. Grant of Security Interest; Security Agreement. Mortgagor hereby grants to Mortgagee, as security for the Obligations, a security interest in the Property to the fullest extent that the Property now or hereafter may be subject to a security interest under the UCC. Mortgagor intends for this Security Instrument to be a "security agreement" within the meaning of the UCC.

## ARTICLE III
## DEBT AND OBLIGATIONS SECURED

3.01. Debt. This Security Instrument and the interests created in favor of Mortgagee hereunder are given for the purpose of securing payment of the Debt if and only if the Property Settlement Provision is deemed unenforceable by Final Order.

## ARTICLE IV
## MORTGAGOR COVENANTS

4.01. Payment of Debt. Herron shall pay the Debt, or such lesser amount as determined in a Final Order from the Divorce Court, and such payment shall be made within 30 days after an order determining the amount of the Debt becomes a Final Order.

4.02. Covenants regarding the Property. Mortgagor shall comply (or cause compliance) with all of its covenants and agreements contained in this Security Instrument, including, without limitation, the following:

(a) Payment of Taxes and Other Lienable Charges. Mortgagor shall pay all Taxes assessed or imposed against the Property prior to delinquency. Mortgagor shall furnish to Mortgagee, upon request, evidence that all Taxes have been paid and are not delinquent. Mortgagor may contest (or permit to be contested) by appropriate legal proceeding conducted in good faith the amount or validity or application in whole or in part of any of the Taxes or any Lien.

(b) [intentionally left blank].

(c) Maintenance and Improvement of Property. Mortgagor shall maintain (or cause to be maintained) the Property in a good and safe condition and repair. Mortgagor shall not commit or suffer any waste of the Property.

(d) Insurance. Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage". The insurance carrier(s) providing the insurance shall be chosen by Mortgagor from insurance companies authorized to do business in the State of Hawaii.

In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Mortgagee.

If the Property is damaged or destroyed, then the proceeds of the insurance insuring against such damage or destruction will be applied, at the option of Mortgagor, (i) to repair, restore or rebuild the Property, or (ii) to reduce the amount Mortgagor owes to Mortgagee under this Security Instrument in which case proceeds up to the amount of the Debt shall be placed into an Escrow Account pursuant to Article VIII.

If the Property is acquired by Mortgagee, all right, title and interest of Mortgagor in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Mortgagee to the extent of the sums secured by this Security Instrument immediately prior to such sale or acquisition.

(e) Intentionally Omitted.

(f) Compliance with Laws. Mortgagor shall comply with (or cause to be complied with) all material Requirements of Law now or hereafter affecting the Property. Mortgagor may contest (or permit to be contested) by appropriate legal proceedings conducted in good faith the Requirements of Law affecting the Property or any alleged violation thereof.

4.03. Warranty of Title. Mortgagor has good, marketable and insurable fee simple title of record to the Property, free and clear of all liens, encumbrances and charges whatsoever except for the Permitted Encumbrances. Mortgagor shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Mortgagee against the claims of all Persons whomsoever.

## ARTICLE V
## AUTOMATIC TERMINATION UPON JUDICIAL DETERMINATION OF PREMARITAL AGREEMENT

5.01. Termination Event. **This Security Instrument shall automatically terminate, and the lien created hereby shall be void and of no further force or effect, upon (a) payment by Herron in full of any Final Order from the Divorce Court awarding Copeland any amount in connection with their divorce; or (b) any Final Order determining that Copeland is not entitled to any payment from Herron in connection with their divorce**.

5.02. [Intentionally left blank].

5.03. Effect of Termination. Upon the automatic termination of this Security Instrument pursuant to Section 5.01:

(a) Cessation of Obligations. All obligations of Mortgagor and Mortgagee under this Security Instrument shall immediately cease and terminate, except for those obligations that by their nature survive termination.

(b) Release of Lien. The lien and security interest granted by this Security Instrument shall be deemed fully released and discharged without any further action required by Mortgagee.

(c) Return of Collateral. Mortgagee shall promptly return to Mortgagor any collateral or other security held by Mortgagee in connection with this Security Instrument, subject to Mortgagee's right to retain copies for record-keeping purposes.

5.04. Recording and Documentation. Following the automatic termination of this Security Instrument:

(a) Satisfaction of Security Instrument. Within twenty-eight (28) days after a Termination Event described in 5.01 occurs, Mortgagee shall execute, acknowledge, and deliver to Mortgagor a Release of Security Instrument in recordable form suitable for recording in the Bureau of Conveyances of the State of Hawaii.

(b) Recording Costs. Mortgagor shall be responsible for all costs and fees associated with recording the Satisfaction of Security Instrument, including but not limited to recording fees, conveyance tax (if any), and courier or delivery charges.

(c) Cooperation. Mortgagee and Mortgagor shall cooperate and execute such additional documents and instruments as may be reasonably necessary to evidence and perfect the termination of this Security Instrument and the release of the lien on the Property.

5.05. Survival. The obligations set forth in Sections 5.01 and 5.04 shall survive the automatic termination of this Security Instrument and shall remain binding upon the parties until all documentation and recording requirements have been satisfied.

## ARTICLE VI
## DEFAULT

6.01. Events of Default. A default ("Event of Default") shall occur under this Security Instrument if (a) Herron fails to repay the Debt when due and such failure continues for ten (10) days after written notice of such default is provided by Mortgagee to Mortgagor, and (b) Mortgagor fails to perform any other Obligation under this Security Instrument when due and such default continues for thirty (30) days after written notice of such default is provided by Mortgagee to Mortgagor, provided, however, that if such default is not reasonably susceptible to cure within 30 days, then the grace period allowed to Mortgagor hereunder to cure such default shall continue as long as Mortgagor commences such cure as soon as reasonably practicable following receipt of written notice of default from Mortgagee and diligently prosecutes such cure.

6.02. Remedies. Upon the occurrence and during the continuance of an Event of Default, Mortgagee may, at its option, and upon prior written notice and demand, exercise any or all of the following remedies:

(a) [Intentionally left blank]

(b) Foreclosure. Mortgagee may institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Security Instrument under any applicable provision of law.

(c) Receiver. Mortgagee may apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, upon a showing of intentional fraud or gross mismanagement on the part of Mortgagor. Any receiver or other party so appointed shall have all powers permitted by law which may be necessary or usual in such cases for the protection, possession, control, management and operation of the Property. At Mortgagee's option, such receiver or trustee shall serve without any requirement of posting a bond.

6.03. Cumulative Remedies: No Waiver, Other Security. Mortgagee's remedies under this Security Instrument are cumulative and may be exercised independently, concurrently or successively in Mortgagee's sole discretion and as often as occasion therefor shall arise. Mortgagee's delay or failure to accelerate the Debt or exercise any other remedy upon the occurrence and during the continuance of an Event of Default shall not be deemed a waiver of such right or remedy. No partial exercise by Mortgagee

of any right or remedy will preclude further exercise thereof. Notice or demand given to Mortgagor in any instance will not entitle Mortgagor to notice or demand in similar or other circumstances nor constitute Mortgagee's waiver of its right to take any future action in any circumstance without notice or demand (except where expressly required by this Security Instrument to be given). Mortgagee may release other security for the Debt, may release any party liable for the Debt, may grant extensions, renewals or forbearances with respect thereto, may accept a partial or past due payment or grant other indulgences, or may apply any other security held by it to payment of the Debt, in each case without prejudice to its rights under this Security Instrument and without such action being deemed an accord and satisfaction or a reinstatement of the Debt. Mortgagee will not be deemed as a consequence of its delay or failure to act, or any forbearances granted, to have waived or be estopped from exercising any of its rights or remedies.

## ARTICLE VII
## WAIVER OF RIGHT OF REDEMPTION AND OTHER RIGHTS

7.01. Waiver of Rights of Redemption. Marshalling and Other Rights. Mortgagor hereby waives, to the fullest extent permitted by law, the benefit of all laws, now or hereafter in force, providing for (a) the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof pursuant to this Security Instrument or any decree, judgment or order of a court of competent jurisdiction; (b) the right to stay or extend any such proceeding, to have this Security Instrument reinstated or to redeem the Property or any portion thereof so sold; (c) rights of marshalling relating to any such sale or sales; (d) any right to require that the Property be sold as separate tracts or units in connection with enforcement of this Security Instrument; and (e) the benefit of any moratorium, exemption or homestead rights now or hereafter provided. Mortgagor makes such waivers on its own behalf and on behalf of all parties now or hereafter claiming or having an interest (direct or indirect) by, through or under Mortgagor.

7.02. Waiver of Trial by Jury. Mortgagor and Mortgagee waive their right, to the fullest extent permitted by law, and agree not to elect, a trial by jury with respect to any issue arising out of this Security Instrument or the relationship between the parties as Mortgagor and Mortgagee.

7.03. Consent to Jurisdiction. Mortgagor hereby consents and submits to the exclusive jurisdiction and venue of the Circuit Court of the Second Circuit of the State of Hawaii with respect to any legal action or proceeding arising with respect to this Security Instrument and waives all objections which it may have to such jurisdiction and venue.

## ARTICLE VIII
## SALE OF PROPERTY SUBJECT TO DIVORCE DECREE OBLIGATIONS; ESCROW REQUIREMENT

8.01. Authorization to Sell; Escrow Condition. Notwithstanding the grant of this Security Instrument to Mortgagee, Mortgagor shall have the right to sell, convey, or otherwise transfer the Property, provided that the following conditions are satisfied:

(a) Advance Written Notice. Mortgagor shall provide written notice to Mortgagee at least 21 business days' prior to the anticipated closing date of any such sale or transfer.

(b) Release of Security Interest Instrument Required. Not later than four business days prior to the scheduled closing of any such sale or transfer, Mortgagee shall execute and deliver to Escrow Agent a full release of this Security Interest in recordable form.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 23 of 78

(c) Escrow Deposit Required. At the closing of any such sale or transfer, Mortgagor shall cause the buyer or closing agent to deposit into an escrow account (the "Divorce Escrow Account") maintained by Land Title Guarantee Company (the "Escrow Agent") an amount equal to 100% of the Debt.

8.02 Escrow Agreement Terms. The Divorce Escrow Account shall be established and maintained pursuant to an escrow agreement (the "Divorce Escrow Agreement") in form and substance reasonably acceptable to Mortgagee and containing the following minimum terms:

1. Irrevocability. The escrow shall be irrevocable by Mortgagee without the prior written consent of Mortgagor.

2. Investment. Escrowed funds shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation or invested in United States Treasury obligations or other investments acceptable to Mortgagee, with all interest and earnings accruing to the benefit of the Escrow Account.

3. Disbursement Conditions. The Escrow Agent shall disburse funds from the Divorce Escrow Account only upon a Final Order of the Divorce Court, directing disbursement to satisfy specific Secured Obligations, in which case the specified amount shall be disbursed to Mortgagee as directed by the Divorce Court, with any remaining balance disbursed to Mortgagor.

4. Reporting. The Escrow Agent shall provide quarterly statements to both Mortgagee and Mortgagor showing the balance, all deposits, disbursements, and investment earnings.

5. Fees and Costs. All fees, costs, and expenses of the Escrow Agent shall be borne equally by Mortgagee and Mortgagor unless otherwise agreed in writing or specified in a court order.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.01. Notices. All notices, consents, approvals and other communications under this Security Instrument ("Notices") are to be in writing and mailed, faxed or delivered and addressed to each party as set forth below. Notices shall be deemed to have been duly given upon the earlier of: (a) actual receipt, and (b) three (3) business days after having been timely deposited, fee prepaid, with a reputable commercial courier service, having a reliable tracking system. A new address for Notice may be established by written notice to the other; provided, however, that no change of address will be effective until written notice thereof actually is received by the party to whom such address change is sent. Notice to outside counsel or parties other than the named Mortgagor and Mortgagee, now or hereafter designated by a party as entitled to notice, are for convenience only and are not required for notice to a party to be effective in accordance with this section. Notice addresses are as follows:

Address for Mortgagee: 1773 Meadow Lane, Steamboat Springs, Colorado 80487

Address for Mortgagee and Herron: 199 Cabin Creek Drive, Durango, Colorado 81301

9.02. Governing Law. This Security Instrument shall be interpreted and enforced according to the laws of the State of Hawaii (without giving effect to rules regarding conflict of laws).

9.03. [intentionally left blank].

9.04. Binding Effect. This Security Instrument shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns, whether by voluntary action of the parties or by operation of law.

9.05. Further Acts. Mortgagor agrees to take such further actions and execute such further documents as Mortgagee reasonably may request to carry out the intent of this Security Instrument or to establish and protect the rights and remedies created or intended to be created in favor of Mortgagee hereunder and the Liens and security hereby created in favor of Mortgagee. Mortgagor agrees to pay all filing, registration or recording fees or taxes, and all expenses incident to the filing/recording of this Security Instrument or any such instrument of further assurance, except where prohibited by law so to do.

9.06. No Third Party Beneficiary. Notwithstanding any provision of this Security Instrument to the contrary, this Security Instrument is not intended by the parties to create, and shall not create, benefits on behalf of any tenant or other occupant of the Property or anyone claiming rights through any tenant or other occupant of the Property.

9.07. No Agency or Partnership. Nothing contained in this Security Instrument shall constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations, or contracts of Mortgagor.

[SIGNATURE PAGE FOLLOWS.]



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 25 of 78

IN WITNESS WHEREOF, the Mortgagor has executed these presents the day and year first above written.

______________________________________

STEVEN K. HERRON, trustee aforesaid



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 26 of 78

STATE OF COLORADO )
)
COUNTY OF ___________ )

The foregoing instrument was acknowledged before me this ___ day of ____________, 2026 by Steven K. Herron, in his authorized capacity.

WITNESS my hand and official seal.

My Commission Expires: _______________

_____________________________________
Notary Public

**EXHIBIT "A"**

All of that certain parcel of land situated at Honolua, District of Lahaina, Island and County of Maui, State of Hawaii, being a portion of Lot 2-B of the Kapalua Mauka Large Lot Subdivision No. 2, being LOT 9 of the "HONOLUA RIDGE-PHASE I", as shown on File Plan Number 2375, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 3.997 acres, more or less.

Together with a non-exclusive easement for access over Lots 26 through 31, inclusive, as shown on File Plan No. 2375; provided, however, that in the event said roadway lots or any portion or portions thereof, are conveyed or dedicated to the County of Maui, the State of Hawaii, or other governmental authority for use as public roadways, then said easement rights over and across said roadway lots, or any portion or portions thereof so conveyed or dedicated, shall automatically terminate; and subject further to the rules and regulations that may be adopted by the Plantation Estates Lot Owners' Association and/or the Grantor governing the use, maintenance and operation of the roadway lots.

Said Lots 27 to 30, inclusive, have been conveyed to Plantation Estates Owners Association, by instrument dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117913.

Together with a non-exclusive easement for access over Lots 52, 53, 54, 55 and 56, as shown on File Plan No. 2006, and over Lots 44 and 45, as shown on File Plan No. 2040, as granted by Grant of Access Easement dated April 26, 2004, recorded in the said Bureau of Conveyances as Document No. 2004-097793, as amended by instrument dated July 14, 2011, recorded as Document No. 2011-117915, and subject to the terms and provisions contained therein; provided, however, that in the event said roadway lots or any portion or portions thereof, are conveyed or dedicated to the County of Maui, the State of Hawaii, or other governmental authority for use as public roadways, then said easement rights over and across said roadway lots, or any portion or portions thereof so conveyed or dedicated, shall automatically terminate; and subject further to the rules and regulations that may be adopted by the Plantation Estates Lot Owners' Association and/or the Grantor governing the use, maintenance and operation of the roadway lots.

Said Lots 52 to 56, inclusive, and Lots 44 and 45, have been conveyed to Plantation Estates Owners Association, by instrument dated September 30, 1993, recorded in the said Bureau of Conveyances as Document No. 93-175922 and instrument dated April 26, 2004, recorded as Document No. 2004-097792.

Together with a perpetual non-exclusive easement, over, under, across and through Easement Area to install, use, control, operate, maintain, repair, and replace of the gate located within the Easement Area, as granted by Grant of Access Gate Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011- 117916; and subject to the terms and provisions contained therein.

Together with a perpetual non-exclusive access easement, over, under, across and through the Easement Area, as granted by Grant of Maintenance Access Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117917; and subject to the terms and provisions contained therein.

Together with a perpetual non-exclusive easement, over, under, across and through the Easement Area, for landscaping and for the discharge and drainage of surface water and the operating, maintenance, repair and replacement of a detention basin other drainage infrastructure necessary or convenient therefore, as granted by Grant of Landscaping and Detention Basin Maintenance Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117918; and subject to the terms and provisions contained therein. Being the land conveyed by WARRANTY DEED dated August 10, 2021, recorded as Document No. A-79010267, by SARI C. SNYDER, Sole Trustee of the Complete Restatement of the Surfside Snyder Family Trust dated December 15, 2000, with full power to sell, convey, mortgage, lease,

etc., as Grantor, to STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018 with full powers to purchase, sell, mortgage, dispose of, or otherwise hypothecate real property, as Grantee.
SUBJECT, HOWEVER, TO THE FOLLOWING:

1. Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2. DESIGNATION OF EASEMENT "U-8" for utility purposes as shown on File Plan No. 2375.

3. GRANT dated October 9, 1961, in favor of MAUI ELECTRIC COMPANY, LIMITED and HAWAIIAN TELEPHONE COMPANY, a Hawaii corporation (now known as HAWAIIAN TELCOM, INC.), recorded in Liber 4162, Page 301. RE: for utility purposes.

Partial Cancellation of Easement dated August 22, 2006, recorded as Document No. 2006-169928.

4. The terms and provisions contained in PRIVATE WATER SYSTEM AGREEMENT dated May 8, 1989, by and between MAUI LAND AND PINEAPPLE CO., INC., a Hawaii corporation, and DEPARTMENT OF WATER SUPPLY OF THE COUNTY OF MAUI, recorded in Liber 23288, Page 80.

5. The terms and provisions contained in SUBDIVISION AGREEMENT (THREE LOTS OR LESS) dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90- 038761.

6. The terms and provisions contained in SUBDIVISION AGREEMENT (LARGE LOTS) dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90-038762.

7. The terms and provisions contained in AGREEMENT dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90-042408.

8. The terms and provisions contained in DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PLANTATION ESTATES dated April 3, 1990, recorded as Document No. 90-049432.

The foregoing Declaration was amended by the following instruments:

Dated January 26, 1999, recorded as Document No. 99-015944.
Dated April 26, 2004, recorded as Document No. 2004-097790.
Dated August 24, 2004, recorded as Documents Nos. 2004-175954 through 2004-175955.
Dated September 15, 2004, recorded as Documents Nos. 2004-199685 through 2004-199686.
Dated April 27, 2005, recorded as Documents Nos. 2005-105731 through 2005-102732.
Dated November 17, 2005, recorded as Documents Nos. 2005-238672 through 2005-238673.
Dated February 10, 2007, recorded as Documents Nos. 2007-036413 through 2007-036414.

Said Declaration was further supplemented by annexation instrument dated August 24, 2004, recorded as Document No. 2004-181463. (Consent thereto given and Joinder by Honolua Ridge LLC by instrument recorded as Document No. 2004-181464.)

9. The terms and provisions contained in PRIVATE WATER SYSTEM AGREEMENT dated December 27, 1990, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and DEPARTMENT OF WATER SUPPLY OF THE COUNTY OF MAUI, recorded as Document No. 91-023833.

10. GRANT dated December 12, 1990, in favor of MAUI ELECTRIC COMPANY, LIMITED, a Hawaii corporation, and GTE HAWAIIAN TELEPHONE COMPANY INCORPORATED, a Hawaii corporation, (now HAWAIIAN TELCOM, INC.), recorded as Document No. 91-066953 thru 91-066955. RE: for utility purposes, affecting land herein described.

Partial Cancellation of Easement dated August 22, 2006, as Document No. 2006-169929

11. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated September 16, 2002, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, through its Department of Public Works and Waste Management, a political subdivision of the State of Hawaii, recorded as Document No. 2002-170353.

12. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated December 30, 2003, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, a political subdivision of the State of Hawaii, recorded as Document No. 2004-000992.

13. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated December 31, 2003, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, a political subdivision of the State of Hawaii, recorded as Document No. 2004-009681.

14. The terms and provisions contained in SUBDIVISION AGREEMENT (AGRICULTURAL USE) dated January 29, 2004, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI DEPARTMENT OF PLANNING, a political subdivision of the State of Hawaii, recorded as Document No. 2004-029530.

15. The terms and provisions contained in SUBDIVISION AGREEMENT (AGRICULTURAL USE) dated April 2, 2004, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI DEPARTMENT OF PLANNING, a political subdivision of the State of Hawaii, recorded as Document No. 2004-072458.

16. The terms and provisions contained in WARRANTY DEED WITH RESERVATIONS AND COVENANTS dated May 7, 2004, recorded as Document No. 2004-097794.

Assignment of Easements and Agreements dated March 27, 2009, recorded as Document No. 2009-046259.

17. GRANT OF UTILITY EASEMENT dated September 29, 2004, in favor of MAUI ELECTRIC COMPANY, LIMITED, a Hawaii corporation, recorded as Document No. 2004-236883. RE: for utility purposes.

18. GRANT OF UTILITY EASEMENT dated April 12, 2005, in favor of HONOLUA RIDGE LLC, a Hawaii limited liability company, and MAUI ELECTRIC COMPANY, LIMITED, a Hawaii



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 30 of 78

corporation, recorded as Document No. 2005-105383. RE: for utility purposes, affecting land herein described

19. GRANT OF EASEMENTS dated --- (acknowledged May, 1, 2006), in favor of KAPALUA RESORT ASSOCIATION, a Hawaii non-profit corporation, recorded as Document No. 2006-082343. RE: Shoreline access and recreational use.

20. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117916. RE: for access gate easement purposes, affecting land herein described.

21. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117917. RE: for maintenance access easement purposes, affecting land herein described.

22. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117918. RE: for landscaping and detention basin maintenance easement purposes, affecting land herein described.

23. The terms and provisions contained in EXCHANGE SPECIAL WARRANTY DEED dated July 24, 2013, recorded as Document No. A-49580073.

24. The terms and provisions contained in AMENDED AND RESTATED DECLARATION OF COVENANTS AND RESTRICTIONS dated July 19, 2016, recorded as Document No. A-60450585.

Said above Declaration restates the original Declaration dated December 29, 1976, recorded in Liber 11922, Page 26.

25. The terms and provisions contained ASSIGNMENT OF RESERVED RIGHTS dated June 17, 2020, by and between HONOLUA RIDGE LLC, an administratively terminated Hawaii limited liability company, by its sole Member Kapalua Land Company, Ltd., a Hawaii corporation, as Assignor, and PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii non-profit corporation, as Assignee, recorded as Document No. A- 74820839.

26. The terms and provisions contained ASSIGNMENT OF RESERVED RIGHTS dated June 17, 2020, by and between HONOLUA RIDGE LLC, an administratively terminated Hawaii limited liability company, by its sole Member Kapalua Land Company, Ltd., a Hawaii corporation, as Assignor, and MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, as Assignee, recorded as Document No. A-74820840.

27. The terms and provisions contained ASSIGNMENT OF EASEMENTS AND AGREEMENTS (KWC) dated May 1, 2021, by and between KAPALUA WATER COMPANY, LTD., a Hawaii corporation, as Assignor, and HAWAII WATER SERVICE COMPANY, INC., a Hawaii corporation, as Assignee, recorded as Document No. A- 77940447.

28. Discrepancies, conflicts in boundary lines, shortage in area, encroachments or any other facts which a correct survey or archaeological study would disclose

**END OF EXHIBIT "A"**

# EXHIBIT B

# PREMARITAL AGREEMENT

This Premarital Agreement ("Agreement"), signed on the dates indicated below, is made between STEVEN K. HERRON ("Steven") and CHRISTINE W. LOEB ("Christine") (collectively "us" or "the Parties"). This Agreement shall be effective on July 21, 2018 ("Marriage Date"). This Agreement is based on the following facts.

**First**: Each of us is now an unmarried person and a resident of Colorado. We execute this Agreement in the State of Colorado. We intend to reside in Colorado and agree that Colorado law shall govern this Agreement.

**Second**: We plan to be married on July 21, 2018.

**Third**: Each of us has a separate estate and separate earning capacity. We have disclosed the nature and extent of our estates and current earnings to each other. Each of us acknowledges that income is variable, as it is dependent upon employment, investment activities, and other variable factors. Therefore, each of us acknowledges that the income of the other represented on the Exhibits attached to this Agreement has been and will continue to be subject to change from year to year.

**Fourth**: Steven is represented by and has been advised by his separate counsel. Steven's attorney is Gregory T. Densen of Sherman & Howard L.L.C. Christine is represented by and has been advised by her separate counsel. Christine's attorney is Emily Kelley of Ethos Legal Services. The Parties acknowledge that Ms. Kelley has provided legal services to both Steven and Christine in the past, that Christine has chosen to retain Ms. Kelley as her counsel for purposes of this Agreement, applicable waivers have been executed, and such decision was not influenced by Steven, and that Ms. Kelley has provided independent legal advice to Christine regarding this Agreement. The advice provided to each of us by our separate counsel has covered the legal rights and obligations arising out of our marriage and the legal rights and obligations that would arise at the dissolution of our marriage or its termination at the death of either of us, both in the absence of this Agreement and as modified by this Agreement. That advice also has covered the provisions of the Colorado Uniform Premarital and Marital Agreements Act.

SP 7/20/18

CWL

**Fifth**: Each of us intends by this Agreement to agree in advance and without court determination on the effect that the termination of our marriage by the Entry of a Decree or by the death of either or both of us would have on the Property acquired by and the income earned or received by each of us before and during our marriage.

**Sixth**: Each of us understands the nature and legal effect of this Agreement. Each of us has read the Agreement in full, and each of us enters into it voluntarily and free from duress. Each of us acknowledges that he or she has not committed fraud in entering into the Agreement, and each of us acknowledges that he or she has not exerted, nor caused to be exerted, any undue influence on the other. Each of us acknowledges that this Agreement is fair, reasonable, and not unconscionable.

**Seventh**: The consideration for this Agreement includes the promises contained in the Agreement, the interests established for each other by its terms, and the mutual waivers contained in it. We each acknowledge the sufficiency of the consideration and waive any objection to its terms based upon insufficient consideration. We also each acknowledge and agree that under C.R.S. § 14-2-306, this Agreement is enforceable without consideration.

## ARTICLES OF AGREEMENT

## 1. MUTUAL DISCLOSURE OF ASSETS AND LIABILITIES

Steven has made a full disclosure to Christine regarding the character of his premarital Separate Property, financial obligations, and income. Christine acknowledges to the best of her belief that Steven has provided full disclosure of his Separate Property, financial obligations, and income. Exhibit A discloses Steven's approximate assets, liabilities, and net worth as of July 2018 and Steven's adjusted gross income for 2015 and 2016 as reported on his income tax returns. To the best of our knowledge, there have been no material changes to the information disclosed on Exhibit A between the date of the Exhibit and the date of this Agreement. We acknowledge that the information on Exhibit A, although intended to reflect Steven's assets, liabilities, and net worth accurately, and although based on Steven's present knowledge, inadvertently may omit some assets or liabilities, but we do not believe any omission

SG 7/19/18



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 34 of 78

CML

to be substantial or material. We also acknowledge that some of the values assigned to assets and liabilities on Exhibits A are approximations, although we believe them to be substantially accurate. Christine's counsel has had a full and unlimited right of inquiry concerning Steven's assets and the value of such assets and his income. We agree to ratify this Agreement by a signed and notarized document that includes an attorney certification by our counsel on or before October 15, 2018. By the date of such ratification, Steven shall provide to Christine his adjusted gross income for 2017 as reported on his income tax return, and Christine shall provide a statement of her approximate assets, liabilities, and net worth and her adjusted gross income for 2015, 2016, and 2017 as reported on her income tax returns.

## 2. DEFINITIONS

2.1. "Entry of a Decree" means the entry of a decree of dissolution of marriage, a decree of divorce terminating our marriage, a decree of legal separation, or a declaration of invalidity or annulment of our marriage.

2.2. "Filing of a Petition" means the filing of a petition or other legal document that requests the Entry of a Decree.

2.3. "Joint Debt" means all debts that are jointly incurred by the two of us in writing and with respect to which both of us are legally obligated to the creditor. Except as may otherwise be expressly provided in any documents relating to Joint Debt, for purposes of Part 6 of this Agreement only, Joint Debt shall be presumed to be the Separate Debt of each of us in proportion to that percentage of the borrowed funds that benefit each of us or were used to acquire, improve, or augment the value of our respective Separate Property; and if all of the borrowed funds from any Joint Debt benefited one party, then all of such Joint Debt shall be the Separate Debt of that party.

2.4. "Jointly Titled Property" means any Property acquired by either or both of us or transferred by either or both of us and, after acquisition or transfer, held by both of us during the marriage, directly or indirectly, in a title form of joint tenancy with right of survivorship, tenancy by the entireties, or tenancy in common.

7/10/18



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 35 of 78

2.5. "Marriage Date" means the actual date of our marriage, scheduled for July 21, 2018.

2.6. "Property" means anything that may be the subject of ownership, whether real or personal, tangible or intangible, legal or equitable, or any interest therein, including income and earnings.

2.7. "Retirement Plan" means each and every form of individual retirement account, Simple Employee Pension (SEP), individual retirement annuity, pension, annuity, retirement, profit-sharing, money purchase, stock option, stock purchase, deferred compensation, tax-deferred annuity, Keogh, 401(k), 403(a), 403(b), 457 or other benefit plan or plans, whether or not tax qualified or subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended from time to time and any successor thereto, in which the parties or either of them are, may have been, may be, or may become a participant or beneficiary.

2.8. "Separate Debt" means all debts of either of us incurred prior to our marriage and all debts incurred solely by one of us during our marriage. The Parties acknowledge ongoing litigation where Steven is a named Party but Christine may testify. For the avoidance of doubt, any settlement or award owed by Steven associated with litigation initiated prior to the Marriage Date, but awarded after the Marriage Date, is Steven's Separate Debt.

2.9. "Separate Property" means, without limiting the general provisions of 3.2 and with respect to each of us:

2.9.1. All Property owned prior to our marriage;

2.9.2. Any Property acquired in exchange for or with the proceeds from the sale, lease, pledging, or other use of Separate Property;

2.9.3. Income from Separate Property and any Property acquired with that income;

2.9.4. Appreciation of the Separate Property of one of us (whether realized or not) without regard to the efforts or monetary contributions of the other one of us traceable to that appreciation and any Property acquired with such realized appreciation;

SG 7/20/18



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 36 of 78

CM

2.9.5. Increased equity in Separate Property due to the reduction of any debt encumbering such Separate Property;

2.9.6. Property acquired by either of us before or during our marriage, if acquired or derived by gift or inheritance, whether outright or in trust, from a third person to one of us, or by gift from one of us to the other;

2.9.7. Any beneficial interest which either of us has in a trust established for the benefit of either of us by one of us or by third parties, including income from, principal of, and appreciation in any trust for the benefit of either of us or in which either of us has an interest before or during the marriage, whether distributed or not;

2.9.8. Income earned or accrued by the personal effort of either of us before or during the marriage through self-employment or employment by others (including any Property acquired with that income), and deferred employment benefits accruing from self-employment or employment of either of us before or during the marriage by others (including any Property acquired with that deferred income);

2.9.9. Professional goodwill or other value associated with the income earning ability or professional reputation of either of us;

2.9.10. Property received by either of us as a recovery for personal injury to that one of us receiving the injury; and

2.9.11. Property received as a recovery for damage to, or loss of, Separate Property.

## 3. <u>CHARACTERIZATION OF ASSETS</u>

3.1. <u>Agreement Controls</u>. By this Agreement we are defining the character of the Property we now own, as well as any Property acquired by either of us in the future from any source. The Agreement is binding on each of us, and its provisions operate independently from and to the exclusion of any statutory or common law provisions relating to the character of the Property of married persons or rights in that Property enforceable by spouses. We understand that provisions of statutory or common law differ from the provisions of this Agreement and that those differences could result in advantages or disadvantages to one or the other of us when compared to the provisions of this Agreement, but we fully, completely, and knowingly waive any such advantages or disadvantages and intend to be and are bound exclusively by the provisions of this Agreement.



2/20/18

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 37 of 78

3.2. General Presumption of Separate Property. All Property owned by either of us during our marriage is presumed to be Separate Property. That general presumption applies to all Property now held by either of us in our individual names and all Property acquired by either of us in the future from any source, as well as any appreciation of our Separate Property and any income from our Separate Property. Property acquired through exchange or reinvestment has the same character as the exchanged or originally invested Property. Increases or decreases in the value of any Property, realized or unrealized, have the same character as the Property on which the appreciation is based. Ownership of any Property as to which there is a recognized indicia of title, such as securities, real estate, bank accounts, or motor vehicles, shall be established by the appropriate title document, and such ownership in the name of one of us shall be presumed to be the Separate Property of that one of us.

3.3. No Marital or Community Property. Notwithstanding the laws of any jurisdiction existing at any time, no marital or community property interests shall be created that shall give rise to any rights in any party.

3.4. Jointly Titled Property. We may own Property as Jointly Titled Property from time to time, and this Agreement does not prevent us from doing so. If we do acquire Jointly Titled Property, we shall do so only by written instrument documenting such property as Jointly Titled Property. Without altering the transfer of joint tenancy property in the event of the death of one party, for purposes of Part 6 of this Agreement only, Jointly Titled Property shall be presumed to be the undivided Separate Property of each of us in proportion to that percentage of funds which he or she contributed to the acquisition (and improvement or debt reduction in the case of real property) of such Property; and, if one party contributed all of such funds, then all of such property shall be the Separate Property of that contributing party, regardless of how title is held. Contributions of funds by one party alone shall include all appreciation in value after the contribution and also shall include income earned and reinvested. If both parties have made contributions of funds to the acquisition (or improvement or debt reduction in the case of real property) of such titled Property, all such appreciation and income earned or reinvested shall be accounted for pro-rata based upon each party's respective acquisition (or improvement or debt reduction) contribution(s).



GB 7/19/18 CW

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 38 of 78

## 4. MANAGEMENT AND CONTROL OF PROPERTY DURING MARRIAGE

4.1. Management and Control of Separate Property. Except as otherwise provided in this Agreement, we agree that each of us shall have sole ownership, management, control, and enjoyment of his or her Separate Property during our marriage. This right includes the right to dispose of Separate Property by any means, including gift, sale, transfer in trust, or disposition by will or will substitute or the designation of a beneficiary.

4.2. Management and Control of Jointly Titled Property. Except as provided by 6.4, during our marriage, our rights to manage, control, and use Jointly Titled Property shall be governed by the applicable state law and shall not be altered by this Agreement.

4.3. Transfers to Trust. Property may be transferred to a trust during our marriage by either of us. The Property so transferred, the income and other benefits payable from or otherwise attributable to that trust, and any appreciation in the value of the trust assets retain the character of the Property transferred to the trust, except in the case of a trust created by one of us for the other's benefit (which shall be clearly documented as such).

4.4. No Restriction on Voluntary Action. This Agreement does not prevent either of us from giving, accepting, or receiving any benefit which the other may freely, voluntarily, and without duress choose to make during our marriage, notwithstanding the existence of this Agreement.

## 5. RESPONSIBILITIES, EXPENSES, AND DEBTS DURING MARRIAGE

5.1. Joint Living Expenses. During our marriage, we shall pay our reasonable joint living expenses as we agree from time to time.

5.2. Federal and State Income Taxes. During our marriage we shall each be responsible for our federal and state income taxes attributable to our respective incomes and gains. During our marriage we shall make decisions on whether to file joint or separate income tax returns as we agree from time to time, and this Agreement does not require us to file joint

7/10/18 GWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 39 of 78

income tax returns. If we do file joint returns, the amount of federal and state income taxes attributable to our respective incomes shall be calculated as set forth in this 5.2. The income tax liability (or refund) attributable to the Separate Property of that one of us with the lesser gross income from Separate Property in a taxable year ("first person") shall be calculated as if the first person filed a separate return and shall be paid from the first person's Separate Property. The income tax liability (or refund) of the person with the greater gross income from Separate Property in a particular year ("second person") shall then be calculated as if the second person's income and associated deductions and credits were added to the first person's income so that the second person shall be responsible for any incremental tax liability attributable to his or her additional income, deductions, and credits. Each person's income tax liability attributable to his or her Separate Property shall be paid from his or her Separate Property, unless we agree to pay some portion or all of either of our respective tax liabilities from Jointly Titled Property. Income tax liabilities attributable to Jointly Titled Property shall be paid from Jointly Titled Property. If one party is entitled to a refund, but the other party's income causes tax to be due with the filing of the joint return, the party with the tax liability shall reimburse the party entitled to a refund to the extent of such refund.

5.3. Separate and Joint Debt. During our marriage we shall each be solely responsible for our Separate Debt, and we shall be jointly responsible for our Joint Debt. Each of us agrees to indemnify and hold the other harmless with regard to Separate Debt. The Separate Property or income of one of us shall not be charged with Separate Debt of the other.

5.4. Compensation for Services Rendered. We contemplate that during the course of our marriage, each of us may render valuable services to the other or with respect to the Property of the other. We agree that such services may be rendered out of love and affection, out of a desire to make our relationship harmonious, and/or as a division of the responsibilities attending our marriage. However, we agree that, unless there is an agreement in writing to the contrary, such services will not be rendered with the expectation of compensation, neither of us will make any claim or maintain any action against the other for compensation for such services, and both of us expressly waive and release any right to bring any such action at law or equity.

CG 7/10/18 CWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 40 of 78

## 6. RIGHTS AND RESPONSIBILITIES UPON FILING OF A PETITION

6.1. Intended Scope. We understand and acknowledge that our marriage may terminate for some reason other than the death of one of us. We recognize that in that event a court may acquire some jurisdiction over the Property of each of us and that in the absence of this Agreement such a court might be authorized to adjudicate our respective Property rights on the Entry of a Decree. To the fullest extent possible, we desire to and do waive and foreclose our rights to litigate Property issues following the Filing of a Petition. Our specific intent is that there shall be no litigation between us and no court determination of our Property rights in that event, as we intend this Agreement to accomplish that function. We desire that our intent be carried out as fully as possible, and we intend and direct that this Agreement shall operate as a substitute for any such claim, litigation, or court determination. We do not intend to deprive any court of its rightful jurisdiction, but we seek in the strongest possible terms to regulate our own rights by this Agreement. We therefore have adopted the definition of Separate Property and have agreed to the disposition of it, as set forth in this Agreement. In implementation of our waiver of our right to litigate Property rights, we agree that neither of us shall have any claims or rights in the Separate Property of the other or to receive temporary maintenance or maintenance or spousal support from the other, except as provided in this Agreement, and we expressly waive and release all such claims and rights. In the event of a Filing of a Petition, and if there are concerns as to the Petitioner's capacity at the time of the Filing of a Petition, the outcomes and ramifications of this Agreement shall toll until a determination as to the Petitioner's capacity has been established in a court of competent jurisdiction, unless a court-appointed guardian has Filed the Petition as provided in C.R.S. § 15-14-315.5 or similar law.

6.2. General Waiver of Rights. We each waive all rights in the Separate Property of the other upon the Filing of a Petition, except as provided in 6.6. Our waiver includes the waiver of any rights arising from our relationship as spouses during our marriage granted by the laws of Colorado and rights granted by the laws of any other jurisdiction (including any jurisdiction having community property laws or the Uniform Marital Property Act or any variation of it) that might otherwise be or become applicable in proceedings leading to the Entry of a Decree. Our waiver includes, but is not limited to, the following rights:



8 7/10/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 41 of 78

6.2.1. The right to a division of Property under Colo. Rev. Stat. § 14-10-113;

6.2.2. All rights to any Retirement Plan of the other;

6.2.3. The right to temporary payment of debts, use of Property, temporary maintenance, or payment of attorney fees under Colo. Rev. Stat. § 14-10-108(1);

6.2.4. The right to any Separate Property of the other, except as provided in 6.6;

6.2.5. Any right to receive maintenance or alimony from the other under Colo. Rev. Stat. § 14-10-114;

6.2.6. Any provisions of the Colorado Uniform Premarital and Marital Agreements Act in conflict with this Agreement; and

6.2.7. Any rights of a like or similar purpose to the enumerated Colorado and statutes originating under the laws of any jurisdiction other than Colorado.

Each of us acknowledges that the waivers contained in this 6.2 are made in consideration for the other provisions of this Part 6 and in accordance with our acknowledgments in Exhibit B, which Exhibit is incorporated into and made a part of this Agreement.

6.3. Separate Property Allocation Upon Filing of a Petition. Upon the Filing of a Petition, each of us shall retain his or her Separate Property, as defined by 2.9 of this Agreement, except as provided in 6.6.

6.4. Division of Jointly Titled Property. Upon the Filing of a Petition, the net equity value of any Jointly Titled Property shall be divided among us in accordance with our respective Separate Property ownership interests as set forth in 3.4 of this Agreement, after taking into account any Joint Debt associated with the property as provided by 2.3, regardless of relative contribution in terms of services rendered to improve the value of the property. If such property is subject to division in kind, each of us shall be entitled to receive his or her interest in kind, including a proportionate division of any tax basis in the property. If such property is not subject to division in kind (such as real property) and if we are unable to agree on a division of such property, we shall submit any dispute to binding arbitration in the most efficient and expeditious manner acceptable to both of us by an arbitrator selected by us or, failing agreement,



AA 7/29/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 42 of 78

by an arbitrator appointed by the court. During the pendency of the dissolution action, neither party shall transfer, encumber, conceal or in any way dispose of any Jointly Titled Property without the written consent of the other party or an order of the Court, except in the usual course of business or for the necessities of life, and each party shall account to each other and to the court for all such expenditures made from Jointly Titled Property subsequent to the Filing of a Petition.

6.5. Separate and Joint Debt. Upon the Filing of a Petition, each of us shall be solely responsible for our Separate Debt. We each shall be responsible for our respective proportionate share of any Joint Debt as determined by 2.3. Notwithstanding the previous sentence, if a debt for which both parties are legally obligated relates to Jointly Titled Property, then as between the parties, each party shall be obligated to pay as his or her Separate Debt that fraction of the debt which is the same fraction of the ownership of such property that is set aside to such party pursuant to the application of the provisions of 3.4 and 6.4 of this agreement. Each of us agrees to indemnify and hold the other harmless with regard to Separate Debt and our respective share of Joint Debt.

6.6. Property Settlement for Christine. Should either Party initiate the Filing of a Petition within 365 days of the Marriage Date, Steven shall make a property transfer to Christine in an amount of Three-Hundred Thousand Dollars ($300,000) despite not completing a full year of marriage. For every completed year of marriage after the first year, upon the Entry of a Decree, Steven shall make a property transfer to Christine in an amount of an additional One Hundred Thousand Dollars ($100,000) for each such completed year of our marriage at the time of the Filing of a Petition, up to a maximum property transfer amount of Two Million Two Hundred Thousand Dollars ($2,200,000) if we have been married for twenty years or more. At Steven's election, he may satisfy his obligation to Christine under this 6.6 by paying the property transfer amount in equal annual installments of One Hundred Thousand Dollars ($100,000), with the first installment due within thirty days after the Filing of Petition. The dollar amounts described in this 6.6 shall be adjusted for increases or decreases in the cost of living from July 2018 to the month of the Filing of a Petition, using the Consumer Price Index – All Items, compiled by the U.S. Department of Labor. The parties specifically acknowledge and agree that



SL 7/20/18 CML

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 43 of 78

if Christine seeks an award of maintenance or attorney fees in contravention of this Agreement, any award of such maintenance or fees shall be paid to her as an advance against the property settlement provided to her in this 6.6.

6.7. Steven shall give Christine a reasonable, safe vehicle of comparable value to the vehicle driven during the course of the marriage.

6.8. In the event that a Petition for Dissolution is filed by Steven within three years of the Marriage Date, Christine shall also be given a 50% interest in the Florida residence commonly known as 2132 Seahorse Lane, St. George Island, Florida or if that residence is sold, a residence of comparable value.

6.9. The Parties acknowledge that they are entering into this Marriage with children from previous relationships. The Parties agree to continue to foster positive ongoing relationships between the other spouse and their respective children in the event of the Filing of a Petition.

## 7. RIGHTS AND RESPONSIBILITIES UPON DEATH

7.1. General Waiver of All Rights Upon Death. Upon the death of either of us, the other waives and releases all rights upon death, whether granted by statute or common law, whether in Colorado or any other jurisdiction, except as otherwise specifically provided in this Part 7. Neither party waives any right that he or she might have to claim surviving spouse benefits or any other benefits from the Social Security Administration.

7.2. Specific Waiver of Rights Upon Death. Without limiting the general waivers of 7.1 and except as otherwise specifically provided in this Part 7, upon the death of either of us, the other waives the following:

7.2.1. The right to take an intestate share under Colo. Rev. Stat. § 15-11-102 or 15-11-301;

SS 7/10/18 CWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 44 of 78

7.2.2. The right to elect against the estate under Colo. Rev. Stat. § 15 11-201 and to take any interest in the augmented estate under Colo. Rev. Stat. § 15-11-202;

7.2.3. The rights of an omitted spouse under Colo. Rev. Stat. § 15-11-301;

7.2.4. The right to a homestead interest under Colo. Rev. Stat. § 38-41-201 and § 38-41-204 (as to each other, but not as to third parties);

7.2.5. The right to act as a personal representative or trustee of the estate or trust of the other, unless specifically nominated or designated by the other;

7.2.6. All rights to any Retirement Plans that have or might have accrued for the benefit of the other, unless specifically designated as beneficiary;

7.2.7. Any rights to contest the disposition of Property by the other by any inter vivos trust;

7.2.8. Any provisions of the Colorado Uniform Premarital and Marital Agreements Act in conflict with this Agreement;

7.2.9. The right to any community property interest under the laws of any community property state which might apply; and

7.2.10. any rights either of us might have to claim any portion of the estate of the other under the laws of any jurisdiction other than Colorado, which are of like or similar purpose to the enumerated Colorado statutes that provide dower, curtesy, forced heirship, community or marital property interests, or any other right to claim against the estate of a deceased spouse by a surviving spouse.

7.3. <u>Provisions for Christine as Steven's Surviving Spouse</u>. If our marriage terminates by reason of Steven's death, and if Christine survives Steven by 30 days or more, Steven agrees to make provisions by his will, revocable trust, beneficiary designation, deed, or other dispositive instrument to provide Christine with a marital trust funded with (1) a ninety percent (90%) interest in Steven's residence in Steamboat Springs, Colorado ("Steamboat Residence"), and (2) an amount of cash or assets with a value equal to Five Hundred Thousand Dollars ($500,000) for each completed year of our marriage at the time of Steven's death, up to a maximum amount of cash or assets with a value equal to Five Million Dollars ($5,000,000) if we have been married for ten years or more. The current Steamboat Residence is 15 E. Spruce Street, Steamboat Springs, CO 80487. In the event that Steven sells the Steamboat Residence and relocates, Christine shall be entitled to a 90% interest in the subsequent residence. The



$ 7/20/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 45 of 78

amounts described in this 7.3 shall be adjusted for increases or decreases in the cost of living from July 2018 to the month of Steven's death, using the Consumer Price Index – All Items, compiled by the U.S. Department of Labor. Steven's obligation under this 7.3 shall be reduced by the value of Steven's interest in Jointly Titled Property that passes to Christine by operation of law at Steven's death. Such marital trust shall distribute to Christine each year for her remaining lifetime (a) all of the net income, and (b) distributions of principal in the discretion of the trustee for Christine's health, maintenance, and support. The marital trust shall be intended to qualify for the federal estate tax marital deduction. The trustee of the marital trust during Christine's lifetime and the remainder beneficiaries of the marital trust at Christine's death shall be designated by Steven. The terms of the marital trust shall provide that, if Christine cohabits with someone with whom she is in a romantic relationship or remarries after Steven's death, Steven's children (or trusts for their benefit) shall have a right to purchase the Steamboat Residence from the marital trust at fair market value, as determined by the average of two qualified appraisals, one obtained by the trustee of the marital trust and one obtained by the children (or their trusts). If, however, the fair market value as determined by one of such qualified appraisers is more than ten percent (10%) more than the fair market value determined by the other qualified appraiser, then the two appraisers shall mutually select a third qualified appraiser who shall determine the net fair market value of the Steamboat Residence. Steven also agrees that he will provide, directly or indirectly, in his estate plan for Copeland Loeb, Christine's son from a previous relationship.

7.4. Provisions Binding on Steven's Estate. Steven intends to make provisions in his will, revocable trust, beneficiary designation, deed, or other dispositive instrument that will provide Christine with the benefits described in 7.3. However, if no such will, revocable trust, beneficiary designation, deed, or other dispositive instrument has been executed, or if a purported dispositive instrument providing such benefit should be ineffective or only partially effective, or if for any reason provisions made by Steven do not secure for Christine the benefits described in 7.3, Steven agrees and specifically directs that Christine shall have a claim against his estate or against any other assets, or the transferee of any other assets, passing as a result of Steven's death, for such benefit or for so much of such benefit as is not otherwise provided for Christine, and for her reasonable attorney fees incurred to present such claim. Steven intends

SS 7/19/18
CWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 46 of 78

and directs that his estate, fiduciaries, beneficiaries, and transferees shall be bound by this Agreement and direction. If Christine's rights are created by Steven's agreement and direction in this 7.4 that Christine shall have a claim for them, rather than by specific provisions in a dispositive instrument, and if for any reason Christine fails to file her claim during the period in which a claimant may file such a claim, Steven directs his fiduciaries, beneficiaries, and transferees to refrain from asserting that failure as a defense to Christine's claim, so long as such claim is made within one year of Steven's death.

7.5. Effect of Prior Filing of Petition or Prior Entry of Decree. If we are not married at Steven's death, or if a Petition has been Filed prior to Steven's death, Christine shall have no rights under 7.3. If a Petition has been Filed prior to Steven's death but there has not yet been the Entry of a Decree, Christine's rights shall be governed by Part 6 of this Agreement as if our marriage was terminated by the Entry of a Decree on the date of Steven's death and Christine shall have a claim against Steven's estate for the satisfaction of such rights. If we are not married at Steven's death, Christine shall have a claim against Steven's estate for obligations that have been established at the termination of our marriage by Entry of a Decree and that have not been satisfied in full at Steven's death.

7.6. Separate and Joint Debt. Upon the termination of our marriage by the death of one or both of us, each of us or the estate of one or both of us shall be solely responsible for our respective Separate Debt. Each of us (or our estate) shall be responsible for one-half of Joint Debt, except in the case of Joint Debt encumbering property held by us as: (1) joint tenants with rights of survivorship or tenants by the entireties, in which case the Joint Debt shall become the Separate Debt of the survivor of us, or (2) tenants in common, in which case such Joint Debt shall be the Separate Debt of each of us (or our estate) in proportion to our respective ownership interests as set forth on the instrument of title. Each of us (or our estate) agrees to indemnify and hold the other harmless with regard to Separate Debt and his or her share of Joint Debt.

7.7. No Agreement On Voluntary Action. As provided in 4.4, we are each free to make, and to have and receive, any testamentary or non-testamentary gratuitous transfers to the other exceeding in beneficial value the rights provided for in this Agreement. However, except as provided in this Agreement, there is no understanding or agreement between us that



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 47 of 78

7/10/18 CWL

either of us shall provide for the other in his or her will, or otherwise, and neither is obligated to do so.

7.8. Portability Election. If our marriage terminates by reason of Christine's death, the personal representative of Christine's estate or the trustee of Christine's revocable trust will, at the request of Steven or Steven's personal representative or trustee, timely file any and all documents necessary to make the election provided in § 2010(c)(5) of the Internal Revenue Code of 1986, as amended by § 303(a) of the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, or any similar or corresponding law (i.e., the "Portability Election"), for the deceased spousal unused exclusion amount with respect to Christine's estate, such that Steven and/or Steven's estate may utilize such deceased spousal unused exclusion amount to the extent allowed under applicable federal law. These documents may include, but are not necessarily limited to, an estate tax return for Christine's estate even if her estate does not owe any federal estate tax at her death. If Steven or Steven's personal representative or trustee makes this request and Christine's estate would otherwise not be required to file an estate tax return or other necessary documents in order to make the election, Steven or Steven's personal representative or trustee shall make arrangements for the preparation of the estate tax return (or necessary documents in connection with the election) and pay the cost of preparing the estate tax return or other documentation and all other costs incurred in connection with the election. Christine's personal representative or trustee shall fully cooperate with the preparation, execution, and filing of the necessary documents (including the estate tax return) and shall promptly furnish all documents and information as shall be reasonably requested for that purpose.

7.9. The Parties acknowledge that they are entering into this Marriage with children from previous relationships. The Parties agree to continue to foster positive ongoing relationships between the other spouse and their respective children in the event that either Party predeceases the other.

7/29/18 [initials] CWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 48 of 78

## 8. ADMINISTRATIVE PROVISIONS

8.1. Binds Successors. This Agreement shall inure to the benefit of and shall be binding upon us. It also shall bind our respective heirs, devisees, personal representatives, administrators, guardians, conservators, trustees, fiduciaries, grantees, donees, successors, and assigns.

8.2. Amendments. During our marriage to each other, this Agreement may not be amended, supplemented, or terminated in whole or in part except by a further writing which expressly refers to this Agreement and is executed by both of us with the same formality as this Agreement, including independent legal representation and the execution of an attorney certification by each counsel.

8.3. No Inferential Abandonment. We acknowledge the possibility that during our marriage our conduct could give rise to an inference that we have abandoned, rescinded, terminated, or modified this Agreement, whether in whole or in part. We agree that this Agreement shall not be considered abandoned, rescinded, or modified by oral agreement, by our conduct alone following our marriage, or by estoppel.

8.4. Relief For Breach. We agree that if either of us fails to perform as required by this Agreement, the other's exclusive remedy shall be to bring an action for damages or specific performance. Nonperformance by either of us shall not be treated as evidence of abandonment, rescission, termination, or modification of the contract by the nonperforming person.

8.5. Defaults Not Waived. No waiver of the breach of any of the terms or provisions of this Agreement shall be a waiver of any preceding or succeeding breach of the Agreement or any other provision of it, and no waiver of any particular provision shall act as a waiver of any other provision.

8.6. Remedies Upon Merger of Agreement Into Court Order. If this Agreement is merged into a decree of dissolution of marriage, a decree of divorce terminating



BS 7/29/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 49 of 78

our marriage, a decree of legal separation, or a decree of declaration of invalidity or annulment, the terms of this Agreement will continue in force and contractual remedies for the enforcement of this Agreement shall still be available.

8.7. Commitment To Execute. We each agree that, upon the reasonable request of the other or the attorney-in-fact or fiduciary of the other, each of us will execute, acknowledge, and deliver any and all instruments necessary or advisable to effectuate or confirm the provisions or purposes of this Agreement, including a waiver of spousal rights under any Retirement Plan. Each of us agrees to execute the documents necessary to effectuate the waivers in 6.2.2 and 7.2.6 as required by the terms of the Retirement Plan and by state or federal law.

8.8. Agreement To Maintain Confidentiality. Much of the information contained in this Agreement and in the Exhibits to this Agreement is confidential. We each agree not to disclose any information contained in this Agreement or the Exhibits relating to the other without the other's prior written consent, except as necessary to enforce the provisions of the Agreement or as ordered in a judicial proceeding. We each agree to delete the Exhibits if this Agreement is ever made a public record, other than in a judicial proceeding, and if this document is part of the record in a judicial proceeding, we agree to mutually request that it be sealed.

8.9. Agreement to Payment of Attorney Fees and Costs. If either of us should retain counsel for the purpose of enforcing or preventing the breach of any provision of this Agreement or for any other judicial remedy relating to it or our relationship as married persons, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses so incurred (including reasonable attorney fees, fees and expenses for expert witnesses, out-of-pocket costs, and costs of the proceeding). Each party shall be responsible for his or her own attorney fees and costs incurred in any proceeding for a legal separation or dissolution of marriage.

8.10. Colorado Agreement. This Agreement has been executed in the State of Colorado. We intend to reside in Colorado during the marriage. We agree that the validity, interpretation, construction, effect, and enforceability of this Agreement, as well as the rights waived or retained by it, shall be governed by the laws of the State of Colorado, even though at



7/29/14

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 50 of 78

any relevant time we may be domiciled in another jurisdiction. It is binding in its effect on our Property wherever situated, and with respect to all persons affected by it, whether such persons are domiciled in Colorado or elsewhere.

8.11. Future Law Changes. We each recognize that the provisions of Colorado law affecting marital rights and interests in the Property and assets of spouses during their marriage and upon dissolution of their marriage may be changed, eliminated, diminished, or enlarged from time to time. It is our intention and agreement to waive and release all such rights and interests as they may be changed, eliminated, diminished, or enlarged by future laws of Colorado or any other jurisdiction, the laws of which may be or become applicable upon termination of our marriage by the Entry of a Decree or by the death of either or both of us. Our waiver and release applies to changes made by court decision as well as by statute.

8.12. Effect of Invalidity. If any provision, term, or condition of this Agreement shall be judicially determined to be invalid, unenforceable, or illegal for any reason, including waiver of any particular right, the other portions of this Agreement shall nevertheless continue in full force and effect, including waiver of other rights, even though that waiver may be contained in the same sentence. If such provision is declared invalid or unenforceable due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

8.13. Construction. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties, and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

8.14. Section Headings For Convenience Only. Section headings in this Agreement are inserted as a matter of convenience for reference and shall not be interpreted to limit or extend the scope of this Agreement.

7/29/18 [initials] CWL



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 51 of 78

8.15. Understanding Fully Integrated. This Agreement contains our entire understanding pertaining to its subject matter. All representations, promises, agreements, warranties, or covenants of any kind, whether express or implied and whether oral or otherwise, that have been made by us both before and after our marriage and that pertain to the subject matter of this Agreement are contained in this Agreement.

8.16. Two Original Documents. Each of us has signed this Agreement in two original documents, including counterparts, one to be delivered to each of us and electronic copies to be maintained by our counsel.

8.17. Counterparts. This Agreement may be executed in one or more counterparts, each of which taken together shall constitute one and the same document.

8.18. Notice of Waiver of Rights. This Agreement is a legal document that will affect each party's legal rights and obligations. Each party understands and has been advised by his or her counsel regarding the following Notice of Waiver of Rights, which Notice in no way modifies the parties' agreement, nor does it purport to reflect that agreement.

NOTICE OF WAIVER OF RIGHTS

IF YOU SIGN THIS AGREEMENT, YOU MAY BE:

- GIVING UP YOUR RIGHT TO BE SUPPORTED BY THE PERSON YOU ARE MARRYING.
- GIVING UP YOUR RIGHT TO OWNERSHIP OR CONTROL OF MONEY AND PROPERTY.
- AGREEING TO PAY BILLS AND DEBTS OF THE PERSON YOU ARE MARRYING.
- GIVING UP YOUR RIGHT TO MONEY AND PROPERTY IF YOUR MARRIAGE ENDS OR THE PERSON TO WHOM YOU ARE MARRIED DIES.
- GIVING UP YOUR RIGHT TO HAVE YOUR LEGAL FEES PAID.



7/20/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 52 of 78

IN WITNESS WHEREOF, we have signed this Agreement, with the Exhibits attached and incorporated, on the date indicated below, intending to be fully bound.

7/29/2018
Date

Steven K. Herron

7.20.18
Date

Christine W. Loeb

STATE OF COLORADO )
) ss.
COUNTY OF ROUTT )

The foregoing instrument was acknowledged before me on July 20, 2018, by Steven K. Herron.

WITNESS my hand and official seal.

Notary Public

[SEAL]

HARPER LOUDEN
Notary Public
State of Colorado
Notary ID # 20064051090
My Commission Expires 12-22-2018

STATE OF COLORADO )
) ss.
COUNTY OF ROUTT )

The foregoing instrument was acknowledged before me on July 20, 2018, by Christine W. Loeb.

WITNESS my hand and official seal.

Notary Public

[SEAL]

HARPER LOUDEN
Notary Public
State of Colorado
Notary ID # 20064051090
My Commission Expires 12-22-2018



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 53 of 78

## ATTORNEY CERTIFICATION

The undersigned certifies that the undersigned is an attorney at law duly licensed and admitted to practice in the State of Colorado; that the undersigned has advised and consulted with Steven K. Herron in connection with his Property and contractual rights and obligations and explained fully to him the legal effect of this Agreement and the effect that it has on his rights and obligations otherwise obtaining as a matter of law; that Steven K. Herron, after being duly advised by the undersigned, acknowledged to the undersigned that he understood the legal effect of this Agreement; and that Steven K. Herron executed the Agreement voluntarily.

Dated: July 20, 2018

By: Gregory T. Densen
Gregory T. Densen
Colo. Reg. #29874
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
303-299-8314

The undersigned certifies that the undersigned is an attorney at law duly licensed and admitted to practice in the State of Colorado; that the undersigned has advised and consulted with Christine W. Loeb in connection with her Property and contractual rights and obligations and explained fully to her the legal effect of this Agreement and the effect that it has on her rights and obligations otherwise obtaining as a matter of law; that Christine W. Loeb, after being duly advised by the undersigned, acknowledged to the undersigned that she understood the legal effect of this Agreement; and that Christine W. Loeb executed the Agreement voluntarily.

Dated: July 20, 2018

By: [signature]
Emily Kelley
Colo. Reg. #4[illegible]320
Ethos Legal Services
1815 Central Park Drive
PMB 144
Steamboat Springs, Colorado 80487
970-233-8915



GS 7/20/18 CWL

U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 54 of 78

# EXHIBIT A

## STEVEN K. HERRON

## FINANCIAL DISCLOSURE AS OF JULY 2018

**EXHIBIT B**

**ACKNOWLEDGMENT REGARDING MAINTENANCE AND ATTORNEY FEE WAIVERS**

Steven acknowledges that, under Colorado law, specifically Colo. Rev. Stat. § 14-2-309(5), provisions of the Agreement relating to the limitation of spousal maintenance and waiver of attorney fees may be unenforceable insofar as such provisions are unconscionable at the time of enforcement of such provisions. Steven acknowledges and agrees that the strongest intent of the parties is that the terms of the Agreement relating to spousal maintenance and attorney fees shall govern in the event of a Filing of a Petition, and that the court shall interpret "unconscionability" in its strictest sense.

July 20, 2018
Date

Steven K. Herron

Christine acknowledges that, under Colorado law, specifically Colo. Rev. Stat. § 14-2-309(5), provisions of the Agreement relating to the limitation of spousal maintenance and waiver of attorney fees may be unenforceable insofar as such provisions are unconscionable at the time of enforcement of such provisions. Christine acknowledges and agrees that the strongest intent of the parties is that the terms of the Agreement relating to spousal maintenance and attorney fees shall govern in the event of a Filing of a Petition, and that the court shall interpret "unconscionability" in its strictest sense.

Christine expressly agrees that a disproportionate standing in assets and/or income shall not constitute the need for alimony, support, or maintenance from Steven, except as provided in the Agreement. Christine acknowledges that the property settlement provisions of 6.6 would provide a standard of living for her that may not equal the standard of living she enjoyed during the marriage but would exceed the standard of living she would have had if the marriage had not occurred.

7.20, 2018
Date

Christine W. Loeb

# EXHIBIT C

| | |
|---|---|
| DISTRICT COURT, LA PLATA COUNTY, COLORADO<br>1060 E. Second Avenue<br>Durango, CO 81301 | DATE FILED<br>March 26, 2026 4:29 PM<br>CASE NUMBER: 2025DR2088 |
| Petitioner: **CHRISTINE COPELAND HERRON**<br><br>v.<br><br>Respondent**: STEVEN KARL HERRON** | ▲COURT USE ONLY▲<br><br>Case Number: **2025 DR 2088**<br><br>Division: 3 |

**ORDER REGARDING ENFORCEABILITY OF PREMARITAL AGREEMENT**

THIS MATTER came before the Court for hearing on March 25, 2026, on Petitioner's objection to enforcement of the parties' premarital agreement ("Agreement"), alleging that enforcement of the Agreement at this time would be unconscionable. The Court, having reviewed the pleadings, considered the evidence and testimony presented, and being otherwise fully advised, makes the following findings and orders:

## I. FINDINGS OF FACT

1. Prior to marriage the parties, who were each represented by independent legal counsel, negotiated and executed a premarital agreement. The parties entered into the Agreement on or about July 20, 2018, prior to their marriage on July 21, 2018. At the time of the parties' marriage, Petitioner ("Wife") was 44 years old and had worked a career as an interior designer since 1999. Respondent ("Husband") was 46 years old and was well established as a highly successful businessman and entrepreneur. There was no evidence presented at the hearing that the Agreement is not valid, or that it was entered unknowingly, involuntarily or the result of duress.

2. The Agreement provided that Husband would retain his substantial premarital assets, including any appreciation thereof, that each party would be responsible for any debts in his or her name,



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 58 of 78

and that Wife explicitly waived any claim she might have to seek spousal maintenance or attorney fees from Husband in the event of divorce.[1]

3. Relevant to this proceeding, the Agreement states:

Each of us intends by this Agreement to agree in advance and without court determination on the effect that the termination of our marriage by the Entry of a Decree or by the death of either or both of us would have on the Property acquired by and the income earned or received by each of us before and during our marriage.[2]

Each of us understands the nature and legal effect of this Agreement. Each of us has read the Agreement in full, and each of us enters into it voluntarily and free from duress. Each of us acknowledges that he or she has not committed fraud in entering into the Agreement, and each of us acknowledges that he or she has not exerted, nor caused to be exerted, any undue influence on the other. Each of us acknowledges that this Agreement is fair, reasonable, and not unconscionable.[3]

5.3 Separate and Joint Debt. During our marriage we shall each be solely responsible for our Separate Debt, and we shall be jointly responsible for our Joint Debt. Each of us agrees to indemnify and hold the other harmless with regard to Separate Debt. The Separate Property or income of one of us shall not be charged with Separate Debt of the other.

6.1. Intended Scope. We understand and acknowledge that our marriage may terminate for some reason other than the death of one of us. We recognize that in that event a court may acquire some jurisdiction over the Property of each of us and that in the absence of this Agreement such a court might be authorized to adjudicate our respective Property rights on the Entry of a Decree. To the fullest extent possible, we desire to and do waive and foreclose our rights to litigate Property issues following the Filing of a Petition. Our specific intent is that there shall be no litigation between us and no court determination of our Property rights in that event, as we intend this Agreement to accomplish that function. We desire that our intent be carried out as fully as

---

[1] R reply at p 2.
[2] Agreement at page 2.
[3] *Id.*

possible, and we intend and direct that this Agreement shall operate as a substitute for any such claim, litigation, or court determination. We do not intend to deprive any court of its rightful jurisdiction, but we seek in the strongest possible terms to regulate our own rights by this Agreement. We therefore have adopted the definition of Separate Property and have agreed to the disposition of it, as set forth in this Agreement. In implementation of our waiver of our right to litigate Property rights, we agree that neither of us shall have any claims or rights in the Separate Property of the other or to receive temporary maintenance or maintenance or spousal support from the other, except as provided in this Agreement, and we expressly waive and release all such claims and rights. In the event of a Filing of a Petition, and if there are concerns as to the Wife's capacity at the time of the Filing of a Petition, the outcomes and ramifications of this Agreement shall toll until a determination as to the Wife's capacity has been established in a court of competent jurisdiction, unless a court-appointed guardian has Filed the Petition as provided in C.R.S. § 15-14-315.5 or similar law.

6.2 General Waiver of Rights. We each waive all rights in the Separate Property of the other upon the Filing of a Petition, except as provided in 6.6. Our waiver includes the waiver of any rights arising from our relationship as spouses during our marriage granted by the laws of Colorado and rights granted by the laws of any other jurisdiction (including any jurisdiction having community property laws or the Uniform Marital Property Act or any variation of it) that might otherwise be or become applicable in proceedings leading to the Entry of a Decree. Our waiver includes, but is not limited to, the following rights:

6.2.1. The right to a division of Property under Colo. Rev. Stat. § 14-10-113;

6.2.2. All rights to any Retirement Plan of the other;

6.2.3. The right to temporary payment of debts, use of Property, temporary maintenance, or payment of attorney fees under Colo. Rev. Stat. § 14- 10-108(1); 6.2.4. The right to any Separate Property of the other, except as provided in 6.6;

6.2.5. Any right to receive maintenance or alimony from the other under Colo. Rev. Stat. § 14-10-114;

6.2.6. Any provisions of the Colorado Uniform Premarital and Marital Agreements Act in conflict with this Agreement; and

6.2.7. Any rights of a like or similar purpose to the enumerated Colorado and statutes originating under the laws of any jurisdiction other than Colorado.
Each of us acknowledges that the waivers contained in this 6.2 are made in consideration for the other provisions of this Part 6 and in accordance with our acknowledgments in Exhibit B, which Exhibit is incorporated into and made a part of this Agreement.

6.3. Separate Property Allocation Upon Filing of a Petition. Upon the Filing of a Petition, each of us shall retain his or her Separate Property, as defined by 2.9 of this Agreement, except as provided in 6.6.

6.5. Separate and Joint Debt. Upon the Filing of a Petition, each of us shall be solely responsible for our Separate Debt. We each shall be responsible for our respective proportionate share of any Joint Debt as determined by 2.3. Notwithstanding the previous sentence, if a debt for which both parties are legally obligated relates to Jointly Titled Property, then as between the parties, each party shall be obligated to pay as his or her Separate Debt that fraction of the debt which is the same fraction of the ownership of such property that is set aside to such party pursuant to the application of the provisions of 3.4 and 6.4 of this agreement. Each of us agrees to indemnify and hold the other harmless with regard to Separate Debt and our respective share of Joint Debt.

6.6 Property Settlement for Christine. Upon the Entry of a Decree, Steven shall make a property transfer to Christine in an amount of One Hundred Thousand Dollars ($100,000) for each completed year of our marriage at the time of the Filing of a Petition, up to a maximum property transfer amount of Two Million Dollars ($2,000,000) if we have been married for twenty years or more. At Steven's election, he may satisfy his obligation to Christine under this 6.6 by paying the property transfer amount in equal annual installments of One Hundred Thousand Dollars

($100,000), with the first installment due within thirty days after the Entry of a Decree. The dollar amounts described in this 6.6 shall be adjusted for increases or decreases in the cost of living from July 2018 to the month of the Filing of a Petition, using the Consumer Price Index - All Items, compiled by the U.S. Department of Labor. The parties specifically acknowledge and agree that if Christine seeks an award of maintenance or attorney fees in contravention of this Agreement, any award of such maintenance or fees shall be paid to her as an advance against the property settlement provided to her in this 6.6.[4]

6.7 Steven shall give Christine a reasonable, safe vehicle of comparable value to the vehicle driven during the course of the marriage.[5]

8.9. Agreement to Payment of Attorney Fees and Costs. If either of us should retain counsel for the purpose of enforcing or preventing the breach of any provision of this Agreement or for any other judicial remedy relating to it or our relationship as married persons, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses so incurred (including reasonable attorney fees, fees and expenses for expert witnesses, out-of-pocket costs, and costs of the proceeding). Each party shall be responsible for his or her own attorney fees and costs incurred in any proceeding for a legal separation or dissolution of marriage.

Christine acknowledges that, under Colorado law, specifically Colo. Rev. Stat. § 14-2-309(5), provisions of the Agreement relating to the limitation of spousal maintenance and waiver of attorney fees may be unenforceable insofar as such provisions are unconscionable at the time of enforcement of such provisions. Christine acknowledges and agrees that the strongest intent of the parties is that the terms of the Agreement relating to spousal maintenance and attorney fees shall govern in the event of a Filing of a Petition, and that the court shall interpret "unconscionability" in its strictest sense.[6]

---

[4] Agreement at 6.6
[5] *Id.* at 6.7
[6] Agreement Exhibit B



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 62 of 78

Christine expressly agrees that a disproportionate standing in assets and/or income shall not constitute the need for alimony, support, or maintenance from Steven, except as provided in the Agreement. Christine acknowledges that the property settlement provisions of 6.6 would provide a standard of living for her that may not equal the standard of living she enjoyed during the marriage but would exceed the standard of living she would have had if the marriage had not occurred.[7]

4. The parties separated in November of 2022. The parties have lived separately and apart since that time. From the date of marriage to the date of separation the parties cohabitated for approximately 4 years and 4 months and as of today's date, the parties have been separated for approximately 3 years and 4 months.

5. Husband initially filed for dissolution of marriage in the Second Circuit of Hawaii on November 21, 2023.

6. Husband filed for Chapter 11 Bankruptcy on July 15, 2024, resulting in an automatic stay. However, the automatic stay related to Husband's bankruptcy filing applies to any issues involving property of the bankruptcy estate, including determinations related to the parties' premarital agreement and allocation of marital property, the stay does not apply to "the establishment or modification of an order for domestic support obligations." 11 U.S.C. §362(b)(2)(A)(ii).

7. On December 9, 2024, the Hawaii Court dismissed the case, apparently in response to Husband's motion to withdraw his complaint where he requested to have the dissolution action dismissed asserting that Colorado was an alternative forum for the case to be heard.

8. On March 12, 2025, Wife filed her Petition for Dissolution of Marriage in Routt County, Colorado, the county in which she resides. On April 7, 2025, Husband moved to change venue to La Platta County, where he resides and was served. On June 24, 2025, the Routt County Court granted Husband's motion for change of venue to the La Platta County District Court.

---

[7] *Id.*



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 63 of 78

9. Petition filed for temporary orders on September 9, 2025. Husband asserted, and the Court agrees, that the issue of the validity and enforceability of the parties' premarital agreement is necessary before such temporary orders hearing can be heard. Accordingly, the Court set the matter for hearing and received evidence and testimony regarding same.

10. The Agreement addresses, among other things, the disposition of property and the waiver of maintenance and attorney fees in the event of dissolution.

11. Wife challenges enforcement of the Agreement, asserting that enforcement would be unconscionable due to Wife's present financial circumstances. Specifically, Wife contends that enforcing the agreement at this time would be unconscionable due to her current financial condition resulting in an inability to meet her reasonable needs.

12. Of note, the parties when married were both in their forties, each had been previously married, and their marriage lasted roughly 4 years and 4 months at the time the parties separated. This does not demonstrate a long-term partnership, but more appropriately defined as a short-term marriage.

13. During this short-term marriage the parties enjoyed a lifestyle available to those whose net worth is in the millions. However, Husband testified that due to the large civil judgment and other business changes, his net worth has been decreased to the point where he can no longer afford that lifestyle and that his current expenses vastly exceed his income.

14. Husband's financial resources were dramatically reduced due to a recent twenty-million-dollar settlement the Husband recently paid to resolve a separate civil matter. Husband has also recently filed for bankruptcy and stated that he currently has 1.4 million dollars in unsecured debt, has $477,000 dollars in cash on hand and has no other major sources of liquidity.

15. Wife is also subject to a civil judgement from a separate case in the amount of around two-million dollars. Wife has appealed the civil judgment, which is still pending, and thus would be speculative to consider at this time.

16. Wife testified regarding the difficulty she is currently having supporting herself. Much of this testimony related to the large pending civil judgment and the attorney fees associated with that case. As stated above, the judgement is on appeal and is still pending.

17. The evidence established that Wife earned her bachelor's degree in the area of interior design and that she has been working in that field since 1999. Wife did cease working for a period of time during the marriage, although Husband encouraged her to continue working because he believed it was something she enjoyed and that she has a clear talent for that type of work.

18. Since their separation, Wife has commenced working again. She owns her own business - CWC Designs in Steamboat Springs, Colorado. Based on the Bureau of Labor Statistics[8] it appears Wife is earning income that is consistent with others employed in her field. Specifically, in 2024 Wife reported her gross income as $53,124 with an average gross monthly income of $6,100 for 2024 and 2025[9], or an average annual gross income of $73,200. In 2026 Wife reported gross income of $41,926.00 for the past four months of work.

19. Of note, it was difficult for the Court to determine Wife's true current financial condition. Wife's testimony was not consistent with what was reported in her sworn financial statements, and she testified that many of her claimed expenses were not actually incurred. Wife testified that although she had not actually incurred many of the expenses listed, she provided this information because these were "anticipated expenses." This greatly concerns the Court in that Wife testified that she knowingly provided financial information that was not accurate although the declaration contained within Wife's Sworn Financial Statement reads, "I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct."[10] Wife's testimony established that her sworn financial statement is neither true nor correct.

20. The Court has similar concerns with other parts of Wife's testimony. The Court finds that Wife's testimony regarding her financial situation was not credible, due in part to her demeanor and body language while testifying, and the clear contrast in her testimony and the court documents.

[8] Respondent Exhibit 11.
[9] Respondent Exhibit 4.
[10] *Id.*

21. Wife brought no property or other financial assets to the marriage. Upon separation, Husband gave Wife $150,000 to "get set up" on her own. Husband purchased a home in Steamboat Springs for $1.9 million and has assigned a 60% ownership interest to Wife. There is no mortgage or lien on this home and Wife lives there with her child from a prior marriage. Wife is not required to pay anything for living in the home. Husband also gave Wife a 2017 Chevrolet Suburban and under the Agreement Wife is entitled to a substantial property settlement of roughly $700,000.00.[11] Wife has been working in the field of interior design since 1999 and makes an income consistent with that field of work. Also of note is that Wife has not sought child support from her prior spouse for the support of their shared child.

## II. CONCLUSIONS OF LAW

### A. Governing Law

22. Colorado law strongly favors the enforceability of prenuptial agreements. *In re Franks*, 542 P.2d 845 (Colo. 1975); *Bartle v. Bartle*, 216 P.2d 649 (Colo. 1950); *In re Ingels*, 596 P.2d 1211 (Colo. App. 1979). Prenuptial agreements in Colorado are governed by the Uniform Premarital and Marital Agreements Act, § 14-2-301, et seq., C.R.S.

23. Pursuant to § 14-2-309(5), a premarital agreement or marital agreement or amendment thereto or revocation thereof that is otherwise enforceable after applying the provisions of subsections (1) to (4) of this section is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement, amendment, or revocation relate to the determination, modification, limitation, or elimination of spousal maintenance or the waiver or allocation of attorney fees, and such provisions are unconscionable at the time of enforcement of such provisions. The issue of unconscionability shall be decided by the court as a matter of law.

24. § 14-2-309(1) states that a premarital agreement or marital agreement is unenforceable if a party against whom enforcement is sought proves:

(a) The party's consent to the agreement was involuntary or the result of duress;

[11] Agreement at 6.6



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 66 of 78

(b) The party did not have access to independent legal representation under subsection 2 of this section;

(c) Unless the party had independent legal representation at the time the agreement was signed, the agreement did not include a notice of waiver of rights under subsection (3) of this section or an explanation in plain language of the marital rights or obligations being modified or waived by the agreement; or

(d) Before signing the agreement, the party did not receive adequate financial disclosure under subsection (4) of this section.

25. The evidence established that the parties voluntarily consented to the Agreement, each party was represented by separate legal counsel of their own choosing, and the parties received adequate financial disclosures.

26. § 14-2-309(5) further provides that "A premarital agreement or marital agreement or amendment thereto or revocation thereof that is otherwise enforceable after applying the provisions of subsections (1) to (4) of this section is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement, amendment, or revocation relate to the determination, modification, limitation, or elimination of spousal maintenance or the waiver or allocation of attorney fees, and such provisions are unconscionable at the time of enforcement of such provisions."

**B. Unconscionability at Time of Enforcement**

27. Colorado law recognizes that unconscionability may be assessed at the time enforcement is sought, particularly where enforcement would produce an unjust or inequitable result under present circumstances.

28. In *In re Marriage of DaFoe*, the Colorado Court of Appeals held, that pursuant to § 14–10–122, C.R.S., "the test of unconscionability is whether there has been a substantial and continuing change of circumstances which renders the existing maintenance provision unfair, unreasonable,



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 67 of 78

and unjust.*"*

*In re Marriage of DaFoe*, 677 P.2d 426, 427 (Colo. App. 1983).

29. Although *DaFoe* addresses modification of maintenance, its reasoning is instructive in evaluating whether enforcement of a premarital waiver or limitation of maintenance would be unconscionable under present conditions.

30. C.R.S. 14-2-309(5) codifies earlier common law concerning unconscionability as applied to maintenance and attorney fee provisions of prenuptial agreements: (i) In *in re Newman* the Colorado Supreme Court held that unconscionability at the time of enforcement of provisions of a prenuptial agreement waiving spousal maintenance was largely dependent upon a party's "health and employability", holding that

> '. . . antenuptial agreements concerning alimony should be enforced unless enforcement deprives a spouse of support that he or she cannot otherwise secure. A provision providing that no alimony shall be paid will be enforced unless the spouse has no other reasonable source of support.' . . .
>
> Thus, one who claims that an antenuptial maintenance agreement is unconscionable must prove that at the time of the marriage dissolution the maintenance agreement rendered the spouse without a means of reasonable support, either because of a lack of property resources or a condition of unemployability.

653 P.2d 728, 735—36 (Colo. 1982). (internal citations omitted) (emphasis added).

(ii) The Colorado Supreme Court addressed attorney fee waivers in prenuptial agreements in the *Ikeler* case, ruling that attorney fee waivers in prenuptial agreements are more likely to be unconscionable when at the time of enforcement parental responsibilities and child support are at issue. 161 P.3d 663, 670 (Colo. 2007).

31. Accordingly, this Court must evaluate Wife's current financial condition in light of the statutory maintenance framework and determine whether enforcement of the Agreement would be unfair, unreasonable, or unjust.

### C. Application to Present Case

32. The Court notes that the testimony and evidence presented that the parties are both subject to individual civil judgments related to a different civil matter than this case. Husband has since settled that matter. Wife has appealed that judgment, which is still pending, and thus would be speculative to consider here.

33. The Court further finds that Wife has been able to reasonably meet her financial needs while the parties have been separated for the last 3 years and 4 months; Wife is currently employed and is receiving income similar to those in her field; Wife has additional income available to her in the form of child support that she has chosen not to seek; the marriage between the parties was for a brief duration; and the parties have no shared children.

34. Considering the above, the Court finds that Wife's current financial condition is sufficient to meet her reasonable needs.

35. After examining all pertinent circumstances, the Court concludes that the Agreement is Enforceable. Enforcement of the Agreement is **not unconscionable**, as Wife has failed to demonstrate that enforcement would be unfair, unreasonable, or unjust under current circumstances and that she cannot meet her reasonable needs.

## III. ORDER

IT IS THEREFORE ORDERED: Petitioner's objection to the Agreement is **DENIED**. The Agreement is enforceable according to its terms. Accordingly, the 04/07/26 hearing regarding temporary maintenance is hereby vacated. The Court reserves jurisdiction to enter further orders as necessary.

SO ORDERED this 26th day of March 2026

Reid Stewart
District Court Judge

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re:<br><br>STEVEN KARL HERRON,<br><br>Debtor and Debtor-in-Possession. | Bk. No. 24-00634<br>(Chapter 11)<br><br>Date: August 10, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris<br><br>[Related to ECF ___] |

ORDER GRANTING DEBTOR'S MOTION FOR ORDER
(I) DISMISSING CHAPTER 11 CASE; AND
(II) APPROVING PROCEDURES FOR DISMISSAL; EXHIBIT 1

Upon the *Motion For Order (I) Dismissing Chapter 11 Case; And (II) Approving Procedures For Dismissal* (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), establishing the procedures for the structured dismissal of the Chapter 11 case, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that all of the Retained Professionals have acted in good faith throughout this Chapter 11 case, and this Court having found that the relief requested in the Motion is in the best interests of the estate, its creditors, and other parties in interest; and this Court having found that Movants' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS **HEREBY ORDERED THAT**:

1. The Motion is granted for the reasons stated on the record.

2. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and of this Order and the requirements of

Bankruptcy Rules 2002(a) and 6004(a) and the Local Bankruptcy Rules are satisfied by such notice, and no further notice of this Order shall be required.

3. Upon the satisfaction of each of the below requirements, the Debtor shall file a notice with the Court that each of the following conditions to dismissal have been satisfied (the "Notice of Dismissal"):

a. The Debtor is authorized and directed to record in the Bureau of Conveyances for the State of Hawaii the Mortgage substantially in the form attached hereto as Exhibit 1; and

b. The Debtor is authorized and directed to distribute all estate funds as follows:

i. *First*, to pay outstanding quarterly fees due and owing in the Chapter 11 Case to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930, and allowed chapter 11 administrative priority claims under 11 U.S.C. § 503(b), including compensation and reimbursement awarded to Retained Professionals under 11 U.S.C. § 330.

ii. *Second*, to pay holders of allowed general unsecured claims in full with interest, with post-petition interest at the federal discount rate.

4. Upon the Debtor's filing of the Notice of Dismissal after the completion of each condition precedent above, the following shall be deemed to occur effective immediately:

a. The Chapter 11 Case shall be dismissed.

b. All other pending motions in this Chapter 11 case are moot, and all future hearings scheduled on such motions are cancelled.

c. The retention of each of the Retained Professionals[2] shall terminate, without the need for further action on the part of this Court, or the Debtor.

5. Notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules to the contrary, including, without limitation, Section 349 of the Bankruptcy Code, all prior orders, findings, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the Debtor's Chapter 11 case, including, without limitation, the order approving the Settlement Motion, shall remain in full force and effect, shall be unaffected by the dismissal of the Chapter 11 case, and are specifically preserved for purposes of finality of judgment and res judicata.

6. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

7. The Debtor is authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

8. This Court shall retain exclusive jurisdiction and power to hear and determine all matters, claims, or disputes arising from or related to the implementation, interpretation, and enforcement of this Order, the transactions

---

[2] "Retained Professionals" means (a) Choi & Ito, (b) Waas Campbell Rivera LLP, (c) Anderson & Baker, LLC, (d) Jeffrey M. Villanueva, P.C., (e) Lowenthal & Lowenthal LLLC, (f) Perrault & Alvarez LLLC, (g) McCannon Tyler & Associates, LLC, CPAs, and (h) Southeast Tax Advisors, LLC.

contemplated herein, and any other order of this Court entered in the Chapter 11 case.

**END OF ORDER**

Submitted by:

CHOI & ITO
Attorneys at Law
CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
Attorneys for Debtor and
Debtor-in- possession

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re:<br><br>STEVEN KARL HERRON,<br><br>Debtor and Debtor-in-Possession. | Bk. No. 24-00634<br>(Chapter 11) |

**DECLARATION OF STEVEN K. HERRON**

I, STEVEN K. HERRON, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

1. I am the debtor and debtor-in-possession in the above-referenced proceeding. I am over the age of 18 years and I am competent to make this declaration and do so based on personal knowledge, except as otherwise indicated.

2. I make this declaration in support of *Motion for Order (i) Dismissing Chapter 11 Case; and (ii) Approving Procedures for Dismissal; Exhibits A-D.* (the "Motion"). Terms used herein and not otherwise defined shall have the meanings given them in the Motion.

3. I have read the Motion and the factual assertions therein are true and correct to the best of my knowledge, information and belief.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 76 of 78

4. Attached to the Motion as Exhibit A is a true and correct copy of the proposed Mortgage on the Kapalua Property. This property is unencumbered and was recently valued by the County of Maui for tax assessment purposes in the gross amount of $6,308,700.

5. Attached to the Motion as Exhibit B is a true and correct copy of the Premarital Agreement effective as of July 18, 2018 between myself and Christine Copeland.

6. Attached to the Motion as Exhibit C is a true and correct copy of the Premarital Agreement Order dated as of March 26, 2026.

7. I am informed that on May 14, 2026, Copeland appealed to the Colorado Court of Appeals, the Premarital Agreement Order issued by the Colorado Divorce Court.

8. Under the Premarital Agreement, the amount due to Christine Copeland is approximately $700,000. However, I am also entitled to deduct the hundreds of thousands of dollars that I have paid to counsel to litigate challenges to the Premarital Agreement.

9. I believe the dismissal of this chapter 11 case is in the best interest of creditors and my bankruptcy estate.

I declare under penalty of perjury, that the foregoing is true and correct.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 323 Filed 07/13/26 Page 77 of 78

Dated: Durango, Colorado, July 13, 2026.

/s/ Steven K. Herron
Steven K. Herron