**Date Signed:**
**September 16, 2026**

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re:<br><br>STEVEN KARL HERRON,<br><br>Debtor and Debtor-in-Possession. | Bk. No. 24-00634<br>(Chapter 11)<br><br>Date: August 10, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris<br><br>[Related to ECF 323] |

ORDER GRANTING DEBTOR'S MOTION FOR ORDER
(I) DISMISSING CHAPTER 11 CASE; AND
(II) APPROVING PROCEDURES FOR DISMISSAL; EXHIBIT 1

Upon the *Motion For Order (I) Dismissing Chapter 11 Case; And (II) Approving Procedures For Dismissal* (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), establishing the procedures for the structured dismissal of the Chapter 11 case, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that all of the Retained Professionals have acted in good faith throughout this Chapter 11 case, and this Court having found that the relief requested in the Motion is in the best interests of the estate, its creditors, and other parties in interest; and this Court having found that Movants' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS **HEREBY ORDERED THAT**:

1. The Motion is granted for the reasons stated on the record.

2. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and of this Order and the requirements of

Bankruptcy Rules 2002(a) and 6004(a) and the Local Bankruptcy Rules are satisfied by such notice, and no further notice of this Order shall be required.

3. Upon the satisfaction of each of the below requirements, the Debtor shall file a notice with the Court that each of the following conditions to dismissal have been satisfied (the "Notice of Dismissal"):

a. The Debtor is authorized and directed to record in the Bureau of Conveyances for the State of Hawaii the Mortgage substantially in the form attached hereto as Exhibit 1; and

b. The Debtor is authorized and directed to distribute all estate funds as follows:

    i. *First*, to pay outstanding quarterly fees due and owing in the Chapter 11 Case to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930, and allowed chapter 11 administrative priority claims under 11 U.S.C. § 503(b), including compensation and reimbursement awarded to Retained Professionals under 11 U.S.C. § 330.

    ii. *Second*, to pay holders of allowed general unsecured claims in full with interest, with post-petition interest at the federal discount rate.

4. Upon the Debtor's filing of the Notice of Dismissal after the completion of each condition precedent above, the following shall be deemed to occur effective immediately:

a. The Chapter 11 Case shall be dismissed.

b. All other pending motions in this Chapter 11 case are moot, and all future hearings scheduled on such motions are cancelled.

c. The retention of each of the Retained Professionals[2] shall terminate, without the need for further action on the part of this Court, or the Debtor.

5. Notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules to the contrary, including, without limitation, Section 349 of the Bankruptcy Code, all prior orders, findings, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the Debtor's Chapter 11 case, including, without limitation, the order approving the Settlement Motion, shall remain in full force and effect, shall be unaffected by the dismissal of the Chapter 11 case, and are specifically preserved for purposes of finality of judgment and res judicata.

6. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

7. The Debtor is authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

8. This Court shall retain exclusive jurisdiction and power to hear and determine all matters, claims, or disputes arising from or related to the implementation, interpretation, and enforcement of this Order, the transactions

[2] "Retained Professionals" means (a) Choi & Ito, (b) Waas Campbell Rivera LLP, (c) Anderson & Baker, LLC, (d) Jeffrey M. Villanueva, P.C., (e) Lowenthal & Lowenthal LLLC, (f) Perrault & Alvarez LLLC, (g) McCannon Tyler & Associates, LLC, CPAs, and (h) Southeast Tax Advisors, LLC.

contemplated herein, and any other order of this Court entered in the Chapter 11 case.

**END OF ORDER**

Submitted by:

CHOI & ITO
Attorneys at Law
CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com

Attorneys for Debtor and
Debtor-in- possession

# EXHIBIT 1

AFTER RECORDATION, RETURN BY MAIL ( ) PICK UP ( )
Christine Copeland

Total pages: ____

TITLE OF DOCUMENT:

MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT
OF LEASES AND RENT AND FINANCING STATEMENT

PARTIES TO DOCUMENT:

| | |
|---|---|
| MORTGAGOR: | STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018, with full power to sell, convey, mortgage, lease, etc. |
| MORTGAGEE: | CHRISTINE COPELAND (also known as / formerly known as CHRISTINE COPELAND HERRON) |

PROPERTY DESCRIPTION:

94 Keoawa Place, Lahaina, HI 96761

TAX MAP KEY NO.: (2) 4-2-008-0009

**MORTGAGE,**
**SECURITY AGREEMENT AND FIXTURE FILING**

THIS MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING ("Security Instrument") is made as of August __, 2026, by and between STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018, with full power to sell, convey, mortgage, lease, etc, whose mailing address is 199 Cabin Creek Drive, Durango, Colorado ("Mortgagor"), and in favor of CHRISTINE COPELAND (also known as / formerly known as CHRISTINE COPELAND HERRON) ("Copeland" or "Mortgagee"), whose mailing address is 1773 Meadow Lane, Steamboat Springs, Colorado 80487.

**BACKGROUND**

WHEREAS, Steven Karl Herron ("Herron") and Christine Copeland entered into a Premarital Agreement effective as of July 21, 2018 (the "Premarital Agreement"), which contains a property settlement payment provision in the event Herron and Copeland divorce and waiver of any spousal maintenance (the "Property Settlement Provision");

WHEREAS, Herron is the settlor and the trustee of the Mortgagor, as well as the debtor and debtor-in-possession in the chapter 11 case pending in the United States Bankruptcy Court, District of Hawaii, as Bk. No. 24-00634 (the "Chapter 11 Case");

WHEREAS, Herron and Copeland are presently parties to a divorce proceeding in the action styled *Christine Copeland Herron v. Steven Karl Herron*, Case No. 25DR2088 (the "Divorce Proceeding"), commenced by Copeland in the District Court, La Plata County, Colorado ("Divorce Court");

WHEREAS, Copeland filed an amended Proof of Claim #3 ("Claim 3") in the Chapter 11 Case asserting she is owed $1,631,485.50 (the "Debt") for alleged "Domestic Support Obligations";

WHEREAS, on January 29, 2026, Herron filed an objection to Claim 3 in the Chapter 11 Case as ECF 264;

WHEREAS, the Divorce Court has jurisdiction to determine the enforceability of the Premarital Agreement and to liquidate the amounts that Copeland may be due from Herron as part of the Divorce Proceeding;

WHEREAS, on March 26, 2026, the Divorce Court entered an *Order Regarding Enforceability of Premarital Agreement* (the "Order Upholding Premarital Agreement") in which the Divorce Court upheld the Premarital Agreement and its Property Settlement Provision;

WHEREAS, on or about May 14, 2026, Copeland appealed the Order Upholding Premarital Agreement to the Colorado Court of Appeal and Herron anticipates that the appeal will take approximately 12-18 months;

WHEREAS, Herron desires to dismiss his Chapter 11 Case and provide for security for repayment of the Debt until the Divorce Court (or other court of competent jurisdiction) enters a Final Order on any amount that is payable by Herron to Copeland in connection with their divorce; and

WHEREAS, until a Final Order regarding the enforceability of the Premarital Agreement is entered, Herron is willing to secure payment of the Debt by granting to Copeland the security described in this Security Instrument.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 8 of 22

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Mortgagor agrees as follows:

## ARTICLE I
## DEFINED TERMS

1.01. Certain Defined Terms. The following capitalized terms used in this Security Instrument shall have the meanings set forth below:

(a) "Governmental Authority" means any government, state or other political subdivision thereof, and ANY Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to such government.

(b) "Final Order" means an order, judgment or decree of a court of competent jurisdiction, including the Divorce Court, and any appellate court of competent jurisdiction, including but not limited to the Colorado Court of Appeals and the Colorado Supreme Court that is final, binding and no longer subject to appeal or modification. An order, judgment, or decree shall be deemed a Final Order if (a) the time to appeal, or seek reargument has expired and no such action has been timely filed, or (b) any appeal taken or petition for review filed has been dismissed or resolved by an appellate court in a manner that upholds the substantive provisions of such order without further possibility of appeal or review.

(c) "Lien" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or otherwise), preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, the filing of any financing statement under the UCC or comparable law of any jurisdiction in respect of any of the foregoing and a mechanics' or materialman's lien).

(c) "Permitted Encumbrances" means (i) easements, restrictions, covenants, rights of way and other exceptions to title affecting the Property created in the ordinary course of business by Mortgagor which do not interfere with the use of the Property in any material respect, and (ii) equipment leases of personal property entered into by Mortgagor in the ordinary course of business.

(d) "Person" means an individual, partnership, limited partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

(e) "Requirements of Law" means any law, regulation, ordinance, code, decree, treaty, ruling or determination of an arbitrator, court or other Governmental Authority, in each case applicable to or binding upon Mortgagor or the Property, including, without limitation, laws, ordinances and regulations pertaining to zoning, occupancy, environmental hazards and subdivision of real property.

(f) "Taxes" means all real estate taxes, government assessments or impositions, lienable water charges, lienable sewer rents, assessments due under owner association documents, ground rents, and all other governmental or similar charges, now or hereafter levied or assessed against the Land and Improvements.

(g) "UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of Hawaii.

## ARTICLE II
## GRANT OF SECURITY

2.01. Property Mortgaged. Mortgagor does hereby irrevocably deed, mortgage, grant, bargain, sell, assign, pledge, warrant, transfer and convey to Mortgagee, as security for Herron's obligations to repay the Debt and to perform and observe the terms and conditions of this Security Instrument (collectively, the "Obligations"), the following property, rights, interests and estates, now owned or hereafter acquired by Mortgagor (collectively, "Property"):

(a) Land. The land described in Exhibit A attached hereto and made a part hereof, together with all estates and development rights now existing or hereafter acquired for use in connection therewith ("Land");

(b) Improvements. All buildings, structures, improvements and fixtures, if any, now or hereafter erected or located on the Land ("Improvements");

(c) Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Property and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof, and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Property and every part and parcel thereof, with all appurtenances thereto;

(d) Fixtures and Personal Property. All machinery, equipment, fixtures (including, without limitation, all heating, air condition, plumbing, lighting, communications and elevator fixtures), furnishings, building supplies and materials, and all other personal property of every kind and nature whatsoever owned by Mortgagor (or in which Mortgagor has or hereafter acquires an interest) and now or hereafter located upon and used or useable in the present or future operation and occupancy of the Property, if any, along with all accessions, replacements or substitutions of all or any portion thereof (collectively, "Personal Property");

(e) Intentionally omitted;

(f) Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(g) Insurance Proceeds. All proceeds of, and any unearned premiums on, any insurance policies covering the Property, including, without limitation, the exclusive right to receive and apply the proceeds of any claim awards, judgments, or settlements made in lieu thereof, for damage to the Property;

(h) Purchase Agreements. All sale agreements, contracts and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the sale of all or any portion of the Property, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, while an Event of Default (defined below) remains uncured, to receive and collect any sums payable to Mortgagor thereunder;



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 10 of 22

(i) Proceeds. All proceeds and profits arising from the conversion, voluntary or involuntary, of any of the foregoing into cash (whether made in one payment or a stream of payments) and any liquidation claims applicable thereto; and

TO HAVE AND TO HOLD the above granted and described Property unto Mortgagee, and her successors and assigns, with power of sale in accordance with the terms and conditions hereof.

2.02. Grant of Security Interest; Security Agreement. Mortgagor hereby grants to Mortgagee, as security for the Obligations, a security interest in the Property to the fullest extent that the Property now or hereafter may be subject to a security interest under the UCC. Mortgagor intends for this Security Instrument to be a "security agreement" within the meaning of the UCC.

## ARTICLE III
## DEBT AND OBLIGATIONS SECURED

3.01. Debt. This Security Instrument and the interests created in favor of Mortgagee hereunder are given for the purpose of securing payment of the Debt if and only if the Property Settlement Provision is deemed unenforceable by Final Order.

## ARTICLE IV
## MORTGAGOR COVENANTS

4.01. Payment of Debt. Herron shall pay the Debt, or such lesser amount as determined in a Final Order from the Divorce Court, and such payment shall be made within 30 days after an order determining the amount of the Debt becomes a Final Order.

4.02. Covenants regarding the Property. Mortgagor shall comply (or cause compliance) with all of its covenants and agreements contained in this Security Instrument, including, without limitation, the following:

(a) Payment of Taxes and Other Lienable Charges. Mortgagor shall pay all Taxes assessed or imposed against the Property prior to delinquency. Mortgagor shall furnish to Mortgagee, upon request, evidence that all Taxes have been paid and are not delinquent. Mortgagor may contest (or permit to be contested) by appropriate legal proceeding conducted in good faith the amount or validity or application in whole or in part of any of the Taxes or any Lien.

(b) [intentionally left blank].

(c) Maintenance and Improvement of Property. Mortgagor shall maintain (or cause to be maintained) the Property in a good and safe condition and repair. Mortgagor shall not commit or suffer any waste of the Property.

(d) Insurance. Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage". The insurance carrier(s) providing the insurance shall be chosen by Mortgagor from insurance companies authorized to do business in the State of Hawaii.

In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Mortgagee.



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 11 of 22

If the Property is damaged or destroyed, then the proceeds of the insurance insuring against such damage or destruction will be applied, at the option of Mortgagor, (i) to repair, restore or rebuild the Property, or (ii) to reduce the amount Mortgagor owes to Mortgagee under this Security Instrument in which case proceeds up to the amount of the Debt shall be placed into an Escrow Account pursuant to Article VIII.

If the Property is acquired by Mortgagee, all right, title and interest of Mortgagor in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Mortgagee to the extent of the sums secured by this Security Instrument immediately prior to such sale or acquisition.

(e) Intentionally Omitted.

(f) Compliance with Laws. Mortgagor shall comply with (or cause to be complied with) all material Requirements of Law now or hereafter affecting the Property. Mortgagor may contest (or permit to be contested) by appropriate legal proceedings conducted in good faith the Requirements of Law affecting the Property or any alleged violation thereof.

4.03. Warranty of Title. Mortgagor has good, marketable and insurable fee simple title of record to the Property, free and clear of all liens, encumbrances and charges whatsoever except for the Permitted Encumbrances. Mortgagor shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Mortgagee against the claims of all Persons whomsoever.

## ARTICLE V
## AUTOMATIC TERMINATION UPON JUDICIAL DETERMINATION OF PREMARITAL AGREEMENT

5.01. Termination Event. **This Security Instrument shall automatically terminate, and the lien created hereby shall be void and of no further force or effect, upon (a) payment by Herron in full of any Final Order from the Divorce Court awarding Copeland any amount in connection with their divorce; or (b) any Final Order determining that Copeland is not entitled to any payment from Herron in connection with their divorce**.

5.02. [Intentionally left blank].

5.03. Effect of Termination. Upon the automatic termination of this Security Instrument pursuant to Section 5.01:

(a) Cessation of Obligations. All obligations of Mortgagor and Mortgagee under this Security Instrument shall immediately cease and terminate, except for those obligations that by their nature survive termination.

(b) Release of Lien. The lien and security interest granted by this Security Instrument shall be deemed fully released and discharged without any further action required by Mortgagee.

(c) Return of Collateral. Mortgagee shall promptly return to Mortgagor any collateral or other security held by Mortgagee in connection with this Security Instrument, subject to Mortgagee's right to retain copies for record-keeping purposes.

5.04. Recording and Documentation. Following the automatic termination of this Security Instrument:



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 12 of 22

(a) Satisfaction of Security Instrument. Within twenty-eight (28) days after a Termination Event described in 5.01 occurs, Mortgagee shall execute, acknowledge, and deliver to Mortgagor a Release of Security Instrument in recordable form suitable for recording in the Bureau of Conveyances of the State of Hawaii.

(b) Recording Costs. Mortgagor shall be responsible for all costs and fees associated with recording the Satisfaction of Security Instrument, including but not limited to recording fees, conveyance tax (if any), and courier or delivery charges.

(c) Cooperation. Mortgagee and Mortgagor shall cooperate and execute such additional documents and instruments as may be reasonably necessary to evidence and perfect the termination of this Security Instrument and the release of the lien on the Property.

5.05. Survival. The obligations set forth in Sections 5.01 and 5.04 shall survive the automatic termination of this Security Instrument and shall remain binding upon the parties until all documentation and recording requirements have been satisfied.

## ARTICLE VI
## DEFAULT

6.01. Events of Default. A default ("Event of Default") shall occur under this Security Instrument if (a) Herron fails to repay the Debt when due and such failure continues for ten (10) days after written notice of such default is provided by Mortgagee to Mortgagor, and (b) Mortgagor fails to perform any other Obligation under this Security Instrument when due and such default continues for thirty (30) days after written notice of such default is provided by Mortgagee to Mortgagor, provided, however, that if such default is not reasonably susceptible to cure within 30 days, then the grace period allowed to Mortgagor hereunder to cure such default shall continue as long as Mortgagor commences such cure as soon as reasonably practicable following receipt of written notice of default from Mortgagee and diligently prosecutes such cure.

6.02. Remedies. Upon the occurrence and during the continuance of an Event of Default, Mortgagee may, at its option, and upon prior written notice and demand, exercise any or all of the following remedies:

(a) [Intentionally left blank]

(b) Foreclosure. Mortgagee may institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Security Instrument under any applicable provision of law.

(c) Receiver. Mortgagee may apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, upon a showing of intentional fraud or gross mismanagement on the part of Mortgagor. Any receiver or other party so appointed shall have all powers permitted by law which may be necessary or usual in such cases for the protection, possession, control, management and operation of the Property. At Mortgagee's option, such receiver or trustee shall serve without any requirement of posting a bond.

6.03. Cumulative Remedies: No Waiver, Other Security. Mortgagee's remedies under this Security Instrument are cumulative and may be exercised independently, concurrently or successively in Mortgagee's sole discretion and as often as occasion therefor shall arise. Mortgagee's delay or failure to accelerate the Debt or exercise any other remedy upon the occurrence and during the continuance of an Event of Default shall not be deemed a waiver of such right or remedy. No partial exercise by Mortgagee

of any right or remedy will preclude further exercise thereof. Notice or demand given to Mortgagor in any instance will not entitle Mortgagor to notice or demand in similar or other circumstances nor constitute Mortgagee's waiver of its right to take any future action in any circumstance without notice or demand (except where expressly required by this Security Instrument to be given). Mortgagee may release other security for the Debt, may release any party liable for the Debt, may grant extensions, renewals or forbearances with respect thereto, may accept a partial or past due payment or grant other indulgences, or may apply any other security held by it to payment of the Debt, in each case without prejudice to its rights under this Security Instrument and without such action being deemed an accord and satisfaction or a reinstatement of the Debt. Mortgagee will not be deemed as a consequence of its delay or failure to act, or any forbearances granted, to have waived or be estopped from exercising any of its rights or remedies.

## ARTICLE VII
## WAIVER OF RIGHT OF REDEMPTION AND OTHER RIGHTS

7.01. Waiver of Rights of Redemption. Marshalling and Other Rights. Mortgagor hereby waives, to the fullest extent permitted by law, the benefit of all laws, now or hereafter in force, providing for (a) the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof pursuant to this Security Instrument or any decree, judgment or order of a court of competent jurisdiction; (b) the right to stay or extend any such proceeding, to have this Security Instrument reinstated or to redeem the Property or any portion thereof so sold; (c) rights of marshalling relating to any such sale or sales; (d) any right to require that the Property be sold as separate tracts or units in connection with enforcement of this Security Instrument; and (e) the benefit of any moratorium, exemption or homestead rights now or hereafter provided. Mortgagor makes such waivers on its own behalf and on behalf of all parties now or hereafter claiming or having an interest (direct or indirect) by, through or under Mortgagor.

7.02. Waiver of Trial by Jury. Mortgagor and Mortgagee waive their right, to the fullest extent permitted by law, and agree not to elect, a trial by jury with respect to any issue arising out of this Security Instrument or the relationship between the parties as Mortgagor and Mortgagee.

7.03. Consent to Jurisdiction. Mortgagor hereby consents and submits to the exclusive jurisdiction and venue of the Circuit Court of the Second Circuit of the State of Hawaii with respect to any legal action or proceeding arising with respect to this Security Instrument and waives all objections which it may have to such jurisdiction and venue.

## ARTICLE VIII
## SALE OF PROPERTY SUBJECT TO DIVORCE DECREE OBLIGATIONS; ESCROW REQUIREMENT

8.01. Authorization to Sell; Escrow Condition. Notwithstanding the grant of this Security Instrument to Mortgagee, Mortgagor shall have the right to sell, convey, or otherwise transfer the Property, provided that the following conditions are satisfied:

(a) Advance Written Notice. Mortgagor shall provide written notice to Mortgagee at least 21 business days' prior to the anticipated closing date of any such sale or transfer.

(b) Release of Security Interest Instrument Required. Not later than four business days prior to the scheduled closing of any such sale or transfer, Mortgagee shall execute and deliver to Escrow Agent a full release of this Security Interest in recordable form.

(c) Escrow Deposit Required. At the closing of any such sale or transfer, Mortgagor shall cause the buyer or closing agent to deposit into an escrow account (the "Divorce Escrow Account") maintained by Land Title Guarantee Company (the "Escrow Agent") an amount equal to 100% of the Debt.

8.02 Escrow Agreement Terms. The Divorce Escrow Account shall be established and maintained pursuant to an escrow agreement (the "Divorce Escrow Agreement") in form and substance reasonably acceptable to Mortgagee and containing the following minimum terms:

1. Irrevocability. The escrow shall be irrevocable by Mortgagee without the prior written consent of Mortgagor.

2. Investment. Escrowed funds shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation or invested in United States Treasury obligations or other investments acceptable to Mortgagee, with all interest and earnings accruing to the benefit of the Escrow Account.

3. Disbursement Conditions. The Escrow Agent shall disburse funds from the Divorce Escrow Account only upon a Final Order of the Divorce Court, directing disbursement to satisfy specific Secured Obligations, in which case the specified amount shall be disbursed to Mortgagee as directed by the Divorce Court, with any remaining balance disbursed to Mortgagor.

4. Reporting. The Escrow Agent shall provide quarterly statements to both Mortgagee and Mortgagor showing the balance, all deposits, disbursements, and investment earnings.

5. Fees and Costs. All fees, costs, and expenses of the Escrow Agent shall be borne equally by Mortgagee and Mortgagor unless otherwise agreed in writing or specified in a court order.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.01. Notices. All notices, consents, approvals and other communications under this Security Instrument ("Notices") are to be in writing and mailed, faxed or delivered and addressed to each party as set forth below. Notices shall be deemed to have been duly given upon the earlier of: (a) actual receipt, and (b) three (3) business days after having been timely deposited, fee prepaid, with a reputable commercial courier service, having a reliable tracking system. A new address for Notice may be established by written notice to the other; provided, however, that no change of address will be effective until written notice thereof actually is received by the party to whom such address change is sent. Notice to outside counsel or parties other than the named Mortgagor and Mortgagee, now or hereafter designated by a party as entitled to notice, are for convenience only and are not required for notice to a party to be effective in accordance with this section. Notice addresses are as follows:

Address for Mortgagee: 1773 Meadow Lane, Steamboat Springs, Colorado 80487

Address for Mortgagee and Herron: 199 Cabin Creek Drive, Durango, Colorado 81301

9.02. Governing Law. This Security Instrument shall be interpreted and enforced according to the laws of the State of Hawaii (without giving effect to rules regarding conflict of laws).

9.03. [intentionally left blank].

9.04. Binding Effect. This Security Instrument shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns, whether by voluntary action of the parties or by operation of law.

9.05. Further Acts. Mortgagor agrees to take such further actions and execute such further documents as Mortgagee reasonably may request to carry out the intent of this Security Instrument or to establish and protect the rights and remedies created or intended to be created in favor of Mortgagee hereunder and the Liens and security hereby created in favor of Mortgagee. Mortgagor agrees to pay all filing, registration or recording fees or taxes, and all expenses incident to the filing/recording of this Security Instrument or any such instrument of further assurance, except where prohibited by law so to do.

9.06. No Third Party Beneficiary. Notwithstanding any provision of this Security Instrument to the contrary, this Security Instrument is not intended by the parties to create, and shall not create, benefits on behalf of any tenant or other occupant of the Property or anyone claiming rights through any tenant or other occupant of the Property.

9.07. No Agency or Partnership. Nothing contained in this Security Instrument shall constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations, or contracts of Mortgagor.

[SIGNATURE PAGE FOLLOWS.]



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 16 of 22

IN WITNESS WHEREOF, the Mortgagor has executed these presents the day and year first above written.

________________________________________
STEVEN K. HERRON, trustee aforesaid

STATE OF COLORADO )
)
COUNTY OF ____________ )

The foregoing instrument was acknowledged before me this ___ day of _____________, 2026 by Steven K. Herron, in his authorized capacity.

WITNESS my hand and official seal.

My Commission Expires: ________________

_______________________________________
Notary Public

## EXHIBIT "A"

All of that certain parcel of land situated at Honolua, District of Lahaina, Island and County of Maui, State of Hawaii, being a portion of Lot 2-B of the Kapalua Mauka Large Lot Subdivision No. 2, being LOT 9 of the "HONOLUA RIDGE-PHASE I", as shown on File Plan Number 2375, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 3.997 acres, more or less.

Together with a non-exclusive easement for access over Lots 26 through 31, inclusive, as shown on File Plan No. 2375; provided, however, that in the event said roadway lots or any portion or portions thereof, are conveyed or dedicated to the County of Maui, the State of Hawaii, or other governmental authority for use as public roadways, then said easement rights over and across said roadway lots, or any portion or portions thereof so conveyed or dedicated, shall automatically terminate; and subject further to the rules and regulations that may be adopted by the Plantation Estates Lot Owners' Association and/or the Grantor governing the use, maintenance and operation of the roadway lots.

Said Lots 27 to 30, inclusive, have been conveyed to Plantation Estates Owners Association, by instrument dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117913.

Together with a non-exclusive easement for access over Lots 52, 53, 54, 55 and 56, as shown on File Plan No. 2006, and over Lots 44 and 45, as shown on File Plan No. 2040, as granted by Grant of Access Easement dated April 26, 2004, recorded in the said Bureau of Conveyances as Document No. 2004-097793, as amended by instrument dated July 14, 2011, recorded as Document No. 2011-117915, and subject to the terms and provisions contained therein; provided, however, that in the event said roadway lots or any portion or portions thereof, are conveyed or dedicated to the County of Maui, the State of Hawaii, or other governmental authority for use as public roadways, then said easement rights over and across said roadway lots, or any portion or portions thereof so conveyed or dedicated, shall automatically terminate; and subject further to the rules and regulations that may be adopted by the Plantation Estates Lot Owners' Association and/or the Grantor governing the use, maintenance and operation of the roadway lots.

Said Lots 52 to 56, inclusive, and Lots 44 and 45, have been conveyed to Plantation Estates Owners Association, by instrument dated September 30, 1993, recorded in the said Bureau of Conveyances as Document No. 93-175922 and instrument dated April 26, 2004, recorded as Document No. 2004-097792.

Together with a perpetual non-exclusive easement, over, under, across and through Easement Area to install, use, control, operate, maintain, repair, and replace of the gate located within the Easement Area, as granted by Grant of Access Gate Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011- 117916; and subject to the terms and provisions contained therein.

Together with a perpetual non-exclusive access easement, over, under, across and through the Easement Area, as granted by Grant of Maintenance Access Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117917; and subject to the terms and provisions contained therein.

Together with a perpetual non-exclusive easement, over, under, across and through the Easement Area, for landscaping and for the discharge and drainage of surface water and the operating, maintenance, repair and replacement of a detention basin other drainage infrastructure necessary or convenient therefore, as granted by Grant of Landscaping and Detention Basin Maintenance Easement dated July 14, 2011, recorded in the said Bureau of Conveyances as Document No. 2011-117918; and subject to the terms and provisions contained therein. Being the land conveyed by WARRANTY DEED dated August 10, 2021, recorded as Document No. A-79010267, by SARI C. SNYDER, Sole Trustee of the Complete Restatement of the Surfside Snyder Family Trust dated December 15, 2000, with full power to sell, convey, mortgage, lease,

etc., as Grantor, to STEVEN K. HERRON, Trustee of the Steven K. Herron Revocable Trust Agreement dated September 11, 2013, as amended by First Amendment dated October 5, 2018 with full powers to purchase, sell, mortgage, dispose of, or otherwise hypothecate real property, as Grantee.
SUBJECT, HOWEVER, TO THE FOLLOWING:

1. Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2. DESIGNATION OF EASEMENT "U-8" for utility purposes as shown on File Plan No. 2375.

3. GRANT dated October 9, 1961, in favor of MAUI ELECTRIC COMPANY, LIMITED and HAWAIIAN TELEPHONE COMPANY, a Hawaii corporation (now known as HAWAIIAN TELCOM, INC.), recorded in Liber 4162, Page 301. RE: for utility purposes.

Partial Cancellation of Easement dated August 22, 2006, recorded as Document No. 2006-169928.

4. The terms and provisions contained in PRIVATE WATER SYSTEM AGREEMENT dated May 8, 1989, by and between MAUI LAND AND PINEAPPLE CO., INC., a Hawaii corporation, and DEPARTMENT OF WATER SUPPLY OF THE COUNTY OF MAUI, recorded in Liber 23288, Page 80.

5. The terms and provisions contained in SUBDIVISION AGREEMENT (THREE LOTS OR LESS) dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90- 038761.

6. The terms and provisions contained in SUBDIVISION AGREEMENT (LARGE LOTS) dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90-038762.

7. The terms and provisions contained in AGREEMENT dated March 15, 1990, by MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, recorded as Document No. 90-042408.

8. The terms and provisions contained in DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PLANTATION ESTATES dated April 3, 1990, recorded as Document No. 90-049432.

The foregoing Declaration was amended by the following instruments:

Dated January 26, 1999, recorded as Document No. 99-015944.
Dated April 26, 2004, recorded as Document No. 2004-097790.
Dated August 24, 2004, recorded as Documents Nos. 2004-175954 through 2004-175955.
Dated September 15, 2004, recorded as Documents Nos. 2004-199685 through 2004-199686.
Dated April 27, 2005, recorded as Documents Nos. 2005-105731 through 2005-102732.
Dated November 17, 2005, recorded as Documents Nos. 2005-238672 through 2005-238673.
Dated February 10, 2007, recorded as Documents Nos. 2007-036413 through 2007-036414.

Said Declaration was further supplemented by annexation instrument dated August 24, 2004, recorded as Document No. 2004-181463. (Consent thereto given and Joinder by Honolua Ridge LLC by instrument recorded as Document No. 2004-181464.)

9. The terms and provisions contained in PRIVATE WATER SYSTEM AGREEMENT dated December 27, 1990, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and DEPARTMENT OF WATER SUPPLY OF THE COUNTY OF MAUI, recorded as Document No. 91-023833.

10. GRANT dated December 12, 1990, in favor of MAUI ELECTRIC COMPANY, LIMITED, a Hawaii corporation, and GTE HAWAIIAN TELEPHONE COMPANY INCORPORATED, a Hawaii corporation, (now HAWAIIAN TELCOM, INC.), recorded as Document No. 91-066953 thru 91-066955. RE: for utility purposes, affecting land herein described.

Partial Cancellation of Easement dated August 22, 2006, as Document No. 2006-169929

11. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated September 16, 2002, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, through its Department of Public Works and Waste Management, a political subdivision of the State of Hawaii, recorded as Document No. 2002-170353.

12. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated December 30, 2003, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, a political subdivision of the State of Hawaii, recorded as Document No. 2004-000992.

13. The terms and provisions contained in AGREEMENT OF ALLOCATION OF FUTURE SUBDIVISION POTENTIAL dated December 31, 2003, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI, a political subdivision of the State of Hawaii, recorded as Document No. 2004-009681.

14. The terms and provisions contained in SUBDIVISION AGREEMENT (AGRICULTURAL USE) dated January 29, 2004, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI DEPARTMENT OF PLANNING, a political subdivision of the State of Hawaii, recorded as Document No. 2004-029530.

15. The terms and provisions contained in SUBDIVISION AGREEMENT (AGRICULTURAL USE) dated April 2, 2004, by and between MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, and COUNTY OF MAUI DEPARTMENT OF PLANNING, a political subdivision of the State of Hawaii, recorded as Document No. 2004-072458.

16. The terms and provisions contained in WARRANTY DEED WITH RESERVATIONS AND COVENANTS dated May 7, 2004, recorded as Document No. 2004-097794.

Assignment of Easements and Agreements dated March 27, 2009, recorded as Document No. 2009-046259.

17. GRANT OF UTILITY EASEMENT dated September 29, 2004, in favor of MAUI ELECTRIC COMPANY, LIMITED, a Hawaii corporation, recorded as Document No. 2004-236883. RE: for utility purposes.

18. GRANT OF UTILITY EASEMENT dated April 12, 2005, in favor of HONOLUA RIDGE LLC, a Hawaii limited liability company, and MAUI ELECTRIC COMPANY, LIMITED, a Hawaii



U.S. Bankruptcy Court - Hawaii #24-00634 Dkt # 343 Filed 09/16/26 Page 21 of 22

corporation, recorded as Document No. 2005-105383. RE: for utility purposes, affecting land herein described

19. GRANT OF EASEMENTS dated --- (acknowledged May, 1, 2006), in favor of KAPALUA RESORT ASSOCIATION, a Hawaii non-profit corporation, recorded as Document No. 2006-082343. RE: Shoreline access and recreational use.

20. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117916. RE: for access gate easement purposes, affecting land herein described.

21. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117917. RE: for maintenance access easement purposes, affecting land herein described.

22. GRANT dated July 14, 2011, in favor of PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii nonprofit corporation, recorded as Document No. 2011-117918. RE: for landscaping and detention basin maintenance easement purposes, affecting land herein described.

23. The terms and provisions contained in EXCHANGE SPECIAL WARRANTY DEED dated July 24, 2013, recorded as Document No. A-49580073.

24. The terms and provisions contained in AMENDED AND RESTATED DECLARATION OF COVENANTS AND RESTRICTIONS dated July 19, 2016, recorded as Document No. A-60450585.

Said above Declaration restates the original Declaration dated December 29, 1976, recorded in Liber 11922, Page 26.

25. The terms and provisions contained ASSIGNMENT OF RESERVED RIGHTS dated June 17, 2020, by and between HONOLUA RIDGE LLC, an administratively terminated Hawaii limited liability company, by its sole Member Kapalua Land Company, Ltd., a Hawaii corporation, as Assignor, and PLANTATION ESTATES LOT OWNERS ASSOCIATION, a Hawaii non-profit corporation, as Assignee, recorded as Document No. A- 74820839.

26. The terms and provisions contained ASSIGNMENT OF RESERVED RIGHTS dated June 17, 2020, by and between HONOLUA RIDGE LLC, an administratively terminated Hawaii limited liability company, by its sole Member Kapalua Land Company, Ltd., a Hawaii corporation, as Assignor, and MAUI LAND AND PINEAPPLE COMPANY, INC., a Hawaii corporation, as Assignee, recorded as Document No. A-74820840.

27. The terms and provisions contained ASSIGNMENT OF EASEMENTS AND AGREEMENTS (KWC) dated May 1, 2021, by and between KAPALUA WATER COMPANY, LTD., a Hawaii corporation, as Assignor, and HAWAII WATER SERVICE COMPANY, INC., a Hawaii corporation, as Assignee, recorded as Document No. A- 77940447.

28. Discrepancies, conflicts in boundary lines, shortage in area, encroachments or any other facts which a correct survey or archaeological study would disclose

**END OF EXHIBIT "A"**